729 A.2d 555

**Albert M. BORTZ**

v.

**Patrick J. NOON and Virginia R. Noon, Coldwell Banker Real Estate, a Pennsylvania Corporation, and Suburban Settlement Services, Inc., a Pennsylvania Corporation**

v.

**J.J. Nolte, an Individual.**

**Appeal of Coldwell Banker Real Estate, Inc.**

Supreme Court of Pennsylvania.

Argued Sept. 14, 1998.

Decided April 22, 1999.

John Lucas, Pittsburgh, for Coldwell Banker. Frederick J. Francis, Pittsburgh, Michael P. Coughlin, Blue Bell, for ami-

cus, Pa. Land Title Ass'n. James L. Goldsmith, Douglas K. Marsico, Harrisburg, for amicus, Pa, Ass'n of Realtors.

Andrea Geraghty, Pittsburgh, for A. Bortz. Michael Fives, Pittsburgh, for J.J. Nolte. Chris Abernathy, for Suburban Settlement Services. Robert Boyle, pittsburgh, for P. Noon and V. Noon.

Before FLAHERTY, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

NEWMAN, Justice.

This is an appeal by Coldwell Banker Real Estate (Coldwell Banker) from an Order of the Superior Court, which affirmed the determination of the Court of Common Pleas of Allegheny County (Chancellor). Coldwell Banker was held liable to the buyer of residential property for a misrepresentation made by its agent relating to a third party's repairs of the on-site sewage disposal system (septic system) located on the property. Coldwell Banker raises the sole issue of whether the actions of its agent amounted to fraudulent misrepresentation. For the reasons that follow, we reverse the Superior Court and hold that a real estate broker cannot be liable for the misrepresentation of its agent, innocently made, under circumstances where the agent had no reason to know that her statement was false, and the agent had no duty to verify the accuracy of the third party report.

## I. FACTS

On July 27, 1986, Albert M. Bortz (the Buyer) and his former wife entered into an Agreement of Sale with Patrick J. Noon and Virginia R. Noon (collectively Sellers), to buy the Sellers' home on Woodland Road in Pittsburgh, Pennsylvania. Coldwell Banker, through its agent, Renee Valent (the Agent), was the selling agent for the property. The Buyer had used the Agent as a selling agent for his previous home, and testified at the hearing of this matter that he considered the Agent as his representative for the Woodland Road transac-

tion. For the purchase of the Woodland Road home, the Agent referred the Buyer to a lender, Coldwell Banker Residential Mortgage Services, Inc. (the Lender). There is no evidence to suggest that the Lender was affiliated with Coldwell Banker. For the Buyer to receive a mortgage commitment from the Lender, the septic system had to pass a dye test before closing, and the Agent informed the Buyer that the septic system needed to pass this test before the closing. The Agent referred the Buyer to a contractor to conduct the test. On August 14, 1986, the contractor performed the dye test, and the septic system failed.[1] The contractor told the Agent that the septic system failed the dye test and the Agent then informed the Buyer. The Agent did not give the Buyer a copy of this report, and apparently, the Buyer did not ask for one.

Following the failed dye test, the Agent told the Buyer that the Sellers had the option of repairing the septic system, and they had chosen another contractor, J.J. Nolte (Nolte), to do the work. There is no evidence that the Agent had any dealings with Nolte nor played any part in the selection of Nolte as a contractor. The Agent informed the Buyer that settlement would be delayed until a dye test was successful. The Buyer argues that the Agent represented to him that the problem with the septic system would be repaired. During the period that Nolte was working on the septic system, the Buyer and his father-in-law went to the home, observed Nolte, and seemingly had the opportunity to ask questions about the repairs to the septic system.

At some point in September of 1986, a woman from Suburban Settlement Services, Inc. (the Title Company) told the Agent that "the dye test passed and now we can set closing." (N.T. 7/7/94 at 51) The Agent conveyed this information to the Buyer, (*Id.* at 52) and then set a settlement closing date. Neither the Agent nor the Buyer reviewed a written Nolte report evidencing a satisfactory dye test. The closing on the house was on September 26, 1986, at the offices of the Title Company, but apparently, the proceedings were delayed for

1. This dye test is not at issue in this appeal, as the Chancellor found no misrepresentation related to it.

ten to twenty minutes. The Agent believed that the closing was delayed because of "Mr. Nolte's inspection—you know, everything was supposed to be fine a week before the closing, so I assume they had this paperwork." (N.T. at 56) In addition, the Agent testified that she believed that the County was inspecting Nolte's work on the day of closing, and she in turn told the Buyer that the County would inspect the septic system. (*Id.*)

When the closing finally occurred, the settlement officer from the Title Company, Christopher Abernathy, told everyone present, including the Agent and the Buyer, that the dye test on the septic system had passed. Apparently, however, neither the Agent nor the Buyer was given any written materials to verify this statement, and neither asked to review the report. Following the closing, the Buyer and his former wife discovered that the septic tank had not actually passed a dye test. In fact, the former wife of the Buyer testified that she received a call from the Title Company and was advised that it had "forgotten to do the dye test." (7/5/94 N.T. at 106) The Title Company then scheduled a new dye test for October 22, 1986. The septic system failed the test and the system could not be repaired. The only alternative was to connect into the public sewer system at a cost of more than $15,000.

In an equity proceeding, the Buyer then sued Coldwell Banker, the Title Company, and the Sellers seeking monetary damages and recision of the Agreement of Sale. The Buyer claimed that all defendants made affirmative misstatements regarding repairs on the septic system and reported that the septic system was functioning properly. The Sellers joined Nolte. After a hearing in the matter, the Chancellor entered an order in favor of the Buyer and against Coldwell Banker, concluding that Coldwell Banker, "through [its agent], made material misrepresentations to [the Buyer] by failing to disclose the conflicting septic test results and making affirmative representations that the septic system was repaired and properly functioning." (Chancellor's opinion at 9) The Chancellor denied a recision of the sale, but entered a decree nisi in favor of the Buyer and against Coldwell Banker for $15,300 plus

pre-judgment interest. The Chancellor held that neither Nolte nor the Title Company owed a duty to the Buyer and thus could not be liable for misrepresentation. Coldwell Banker filed motions for post-trial relief, alleging that it could not be liable for misrepresentation, which the trial court denied. Coldwell Banker then filed an appeal to the Superior Court.

On the appeal of Coldwell Banker, the Superior Court affirmed in part and reversed in part the decision of the Chancellor. The Superior Court agreed with the conclusion of the Chancellor that Coldwell Banker was liable to the Buyer for misrepresentation because the Agent had a duty to ascertain whether the septic system had actually passed the dye test, and her failure to do so constituted a misrepresentation under the circumstances of this case. However, the Superior Court reversed the finding of the Chancellor regarding Nolte and the Title Company, and held that both could be liable to the Buyer for misrepresentation. Judge Johnson dissented. While Judge Johnson agreed that Nolte and the Title Company were liable to the Buyer for misrepresentation, he disagreed that Coldwell Banker was liable.[2]

We granted allocatur limited to the question of whether the Superior Court was correct in its conclusions that the Agent had a duty to ascertain whether the septic system had actually passed the dye test and if her failure to do so amounted to a misrepresentation to the Buyer. There is no appeal docketed regarding the determination of the Superior Court that Nolte and the Title Company owed a duty to the Buyer, and we do not address that portion of the Superior Court's opinion in this appeal.

## II. ANALYSIS

Coldwell Banker argues that it can not be liable for fraudulent misrepresentation because the Agent made no affirmative misrepresentation, she had no duty to disclose Nolte's reports,

2. Judge Johnson explained that the Lender required the septic system test and the Agent gave the Buyer all of the information that she had about the test.

and she had no knowledge that the septic system was not working properly. Coldwell Banker further asserts that at most the Agent made a statement concerning a future event that the septic system *would be* repaired, a statement that can not support a cause of action for fraudulent misrepresentation.

The Buyer counters that the Agent indeed misrepresented material facts when she misrepresented that the dye test was clear, *coupled with* a promise of a future event that the septic system would pass a dye test and function properly before closing. Moreover, she scheduled and attended the closing; failed to advise the Buyer that she was unaware of whether the original representation was actually true; and failed to ascertain whether the facts originally represented continued to be true. Thus, the Agent is liable for misrepresenting a material fact on which the Buyer relied in closing on the property. Therefore, she had a duty both to correct this misrepresentation and to disclose the report of Nolte to the Buyer.

The proper scope of review in an appeal from a final decree is well established, and,

> the findings of the Chancellor will not be reversed unless it appears that he has clearly abused his discretion or committed an error of law. Where credibility of witnesses is important to the determination, the Chancellor's findings are entitled to particular weight because of his opportunity to observe their demeanor. Where a reading of the record reasonably can be said to reflect the conclusions reached by the Chancellor, a reviewing court may not substitute its judgment for that of the Chancellor. A reviewing court, however, is not bound by findings which are without support in the record or have merely been derived from other facts.

*Rusiski v. Pribonic,* 511 Pa. 383, 515 A.2d 507, 510 (1986) (citations omitted); *See also, DeJoseph v. Zambelli,* 392 Pa. 24, 26, 139 A.2d 644, 648 (1958)("findings of fact ... made by a Chancellor ... will not be reversed on appeal if they are supported by adequate evidence.")

Because of this standard, the issues before us concern whether the record reasonably reflects the Chancellor's finding that the Agent made an affirmative misrepresentation and whether the Chancellor correctly determined that Coldwell Banker could be legally liable, under the circumstances of this case.[3] We will analyze this matter first to determine whether the record supports the Chancellor's conclusion that the Agent made affirmative statements and second to decide whether Coldwell Banker is legally liable for any misrepresentation of the Agent, including whether she had a duty to disclose the written report of Nolte.

## A. FACT FINDING OF THE CHANCELLOR:

After a hearing in this matter, the Chancellor found that the Agent made "affirmative misrepresentations that the septic system was repaired and properly functioning." A review of the record reasonably reflects this conclusion. In particular, the Agent testified that in the days preceding the closing, she told the Buyer that the septic system had passed the dye test. (N.T. 7/7/94 at 50–51) This representation was not accurate, and was followed by conduct that reinforced the affirmative statement that the septic system had passed the dye test. The Agent set up the closing date, which strengthened the perception that the septic system was acceptable because the mortgage could not be approved without such a test. Additionally, at the closing, the proceedings were delayed on the assumption the dye test information was delivered to the closing. These acts, together with the affirmative statement of the Agent before the closing, support the determination of the Chancellor that the Agent made an affirmative misrepresentation. We now turn to the question of whether, under the facts presented here, the Agent had a duty to disclose the written report and whether the law in this Com-

**3.** Coldwell Banker represents that the courts below based liability on the notion that the Agent had misrepresented facts by sitting silently at the closing and that she was held liable under a "failure to disclose" theory of misrepresentation. While the Superior Court's Opinion is unclear, the Chancellor's adjudication clearly states that he found that the Agent had made *affirmative* misrepresentations.

monwealth allows the Buyer to recover against Coldwell Banker for the Agent's affirmative misrepresentation regarding the dye test.

## B. LEGAL LIABILITY FOR MISREPRESENTATION:

Generally, a misrepresentation may be actionable pursuant to three theories: Intentional Misrepresentation, Negligent Misrepresentation, and Innocent Misrepresentation.[4]

### 1. Intentional Misrepresentation:

 The elements of intentional misrepresentation are as follows:

(1) A representation;

(2) which is material to the transaction at hand;

(3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false;

(4) with the intent of misleading another into relying on it;

(5) justifiable reliance on the misrepresentation; and,

(6) the resulting injury was proximately caused by the reliance.

*Gibbs v. Ernst*, 538 Pa. 193, 207, 647 A.2d 882, 889 (1994), *citing*, Restatement (Second) of Torts § 525 (1977). The tort of intentional non-disclosure has the same elements as intentional misrepresentation "except in the case of intentional non-disclosure, the party intentionally conceals a material fact rather than making an affirmative misrepresentation." *Id.* We have recognized the tort of intentional misrepresentation and intentional concealment in the context of real estate broker liability to the buyer of residential property. *See, e.g.,*

---

**4.** In footnote 3 of its brief, Coldwell Banker argues that the Buyer chose to proceed under a theory of fraudulent misrepresentation only. The Record does not support this assertion as the Complaint does not delineate the claim as one for intentional, negligent or innocent misrepresentation, and the legal conclusions of the Chancellor specifically reference and discuss negligent misrepresentation and the assumption of duty under Section 323 of the Restatement (Second) of Torts. Moreover, the Buyer submitted to the Chancellor findings of fact and conclusions of law, which clearly reference all three forms of misrepresentation. Accordingly, we will address all three.

*Aiello v. Ed Saxe Real Estate, Inc.,* 508 Pa. 553, 499 A.2d 282 (1985) (Real estate broker may be liable for intentional misrepresentation). *See also Highmont Music Corp. v. J.M. Hoffmann Co.,* 397 Pa. 345, 155 A.2d 363 (1959) (recision of sale appropriate where the agent intentionally failed to disclose latent defects in real estate.)

 Here, there is no evidence supporting a conclusion that the Agent intentionally misrepresented any facts to the Buyer, nor intended to deceive the Buyer by failing to give him copies of the septic system reports, which she herself did not have. While the Agent made an affirmative misrepresentation that the dye test was clear, there is no finding that the Agent made any misrepresentation with knowledge that it was false. Instead, the Agent was giving information to the Buyer that she received from the Title Company, an apparently reputable company, so that she could schedule the closing. The Agent had no agency relationship with the Title Company or Nolte, and she had not selected Nolte to perform the septic tank repairs nor asked him to do the dye test. The Chancellor did not find that the Agent acted with knowledge that the septic tank had not passed the dye test, nor that she acted recklessly. Moreover, there was no evidence in the record that the Agent intended to mislead the Buyer in any way, a required element of intentional misrepresentation. *Gibbs,* 538 Pa. at 207, 647 A.2d at 889; *Reichert's Estate,* 356 Pa. 269, 271, 51 A.2d 615, 616 (1947)("fraud consists in anything calculated to deceive"). Thus, the Record does not support any conclusion that the Agent could be liable to the Buyer for an intentional fraudulent misrepresentation or concealment.

### 2. Negligent Misrepresentation:

 Negligent misrepresentation requires proof of: (1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and; (4) which results in injury to a party· acting in justifiable reliance on the misrepresentation. *See, e.g., Gibbs,* 538 Pa. at 210, 647 A.2d at 890, *citing,* Restatement (Second) Torts

§ 552. The elements of negligent misrepresentation differ from intentional misrepresentation in that the misrepresentation must concern a material fact and the speaker need not know his or her words are untrue, but must have failed to make a reasonable investigation of the truth of these words. *Id.* Moreover, like any action in negligence, there must be an existence of a duty owed by one party to another. *Id.* This Court has not specifically recognized this cause of action in the situation of a real estate broker, but the Superior Court has applied a negligence standard in a number of cases. *See, e.g., Sevin v. Kelshaw,* 417 Pa.Super. 1, 611 A.2d 1232 (1992);[5] *Smith v. Renaut,* 387 Pa.Super. 299, 564 A.2d 188 (1989);[6] *Slaybaugh v. Newman,* 330 Pa.Super. 216, 479 A.2d 517 (1984);[7] *Long v. Brownstone Real Estate Co.,* 335 Pa.Super. 268, 484 A.2d 126 (1984);[8] *Glanski v. Ervine,* 269 Pa.Super. 182, 409 A.2d 425 (1979).[9]

**5.** In *Kelshaw,* the court held that a real estate broker was not liable for negligent misrepresentation for failing to disclose non-material facts about easement.

**6.** In *Renaut,* the Superior Court held that "where a broker employed to sell real estate misrepresents or conceals a material fact, he may be found liable to the purchaser in damages." The issue in Renaut was whether the real estate broker was liable to the buyer of the property for misrepresenting the extent of termite damage in a home, and caused the buyer not to conduct an inspection of the premises. Also at issue was the existence of a carcinogen in the well. The Superior Court held that the broker could be liable for the failure to disclose termite damage, but not for the carcinogen. It appears from the facts presented in that opinion that the real estate broker was charged with knowing that the termite damage was actually more extensive than represented, and that the broker failed to disclose known damage. The broker could not have known about the carcinogen in the well, and was not liable for his failure to disclose it.

**7.** In *Slaybaugh,* the court held that a real estate broker and salesmen owe a duty of candor towards buyers and other third parties and may be held accountable in damages by a third party purchaser for misrepresentation including the failure to disclose material information.

**8.** In *Long,* a real estate broker was held liable to the purchaser for stating that the property was not subject to flooding, when there was evidence of previous flooding on the property.

**9.** In *Glanski,* the Superior Court found that a real estate broker can be liable to the purchaser of real estate where the broker made a material misrepresentation regarding the lack of termite damage and the broker

Moreover, many other states recognize that a real estate broker may be liable for negligent misrepresentations when the broker fails to use reasonable care in ascertaining the truth of a representation. *See, e.g., Mahler v. Keenan Real Estate, Inc.,* 255 Kan. 593, 876 P.2d 609 (1994); *Teter v. Old Colony Company,* 190 W.Va. 711, 441 S.E.2d 728 (1994); *Hoffman v. Connall,* 108 Wash.2d 69, 736 P.2d 242 (1987); *Menzel v. Morse,* 362 N.W.2d 465 (Iowa 1985); *Gauerke v. Rozga,* 112 Wis.2d 271, 332 N.W.2d 804 (1983); *Hagar v. Mobley,* 638 P.2d 127 (Wyo.1981); *Prigge v. South Seventh Realty,* 97 Nev. 640, 637 P.2d 1222 (1981); *Berryman v. Riegert,* 286 Minn. 270, 175 N.W.2d 438 (1970). Generally, these courts have expanded liability of real estate brokers for failing independently to verify facts that the seller represents to the broker, and which the broker then passes on to the buyer.[10] In these cases, the courts have found that because of the relationship among the buyer, seller, and broker, the broker is in a better position to verify the statements of the seller than is the buyer. *See, e.g., Hoffman v. Connall,* 736 P.2d at 245.

Here, neither the Chancellor nor the Superior Court specifically articulated the exact legal theory supporting their ultimate finding of liability. However, although not specifically labeled, it appears that both the Chancellor and the Superior Court found Coldwell Banker liable based upon either a negligent or innocent misrepresentation, for the Agent's misstatement to the Buyer that the septic system passed the dye test and for negligently failing to provide him with Nolte's written reports. In his Adjudication of the matter, the Chancellor discussed Section 323 of the Restatement (Second) of Torts, apparently concluding that the Agent had assumed a

was duty bound to determine otherwise, where the seller admitted that seller knew of termite damage.

**10.** *See generally* Dawn K. McGee, *Potential Liability for Misrepresentation in Residential Real Estate Transactions: Let the Broker Beware,* 16 Fordham Urb. L.J. 127, 151 n. 73 (1988); Paula C. Murray, *The Real Estate Broker and The Buyer, Negligence and the Duty to Investigate,* 32 Vill. L.Rev. 939 (1987); *Imposing Tort Liability On Real Estate Brokers Selling Defective Housing,* 99 Harv. L.Rev. 1861 (1986).

duty to the Buyer. (Chancellor's Adjudication at 8). In denying post-trial motions, the Chancellor opined that the Agent "so positioned [herself] as to be liable to the Buyer in money damages" (Chancellor's Opinion denying post-trial relief at 4) and "had the duty to be sure that when the closing of title occurred the circumstances conformed with the Buyer's expectations or risk the consequences." (*Id.* at 5.) He also determined that the Agent:

> took no action to be sure that the Nolte report was, in fact, a 'clear septic test' .... It was careless (or worse) of Valent to either rely wholly on Abernathy's interpretation of the report, and not to examine it herself ... At the very least, Valent should have seen to it that Bortz had both the Ross and Nolte reports available for his review. Valent did none of the above and proceeded in reckless disregard of the expectations and attendant rights of Bortz.

(*Id.* at 6) The Superior Court essentially agreed with the Chancellor and determined that the Agent and Coldwell Banker were liable to the Buyer because the Agent had a duty to make an independent inquiry to determine whether the septic tank actually had passed the dye test, by reviewing either the report herself, or checking County records.

While we recognize that there is no reason to *per se* omit a real estate broker or its agent from liability for negligence or misrepresentations negligently made, a reasonable review of the record in this matter does not support the conclusion that the Agent made a negligent misrepresentation, or negligently failed to disclose the Nolte report, because there is not an adequate record of evidence to support a conclusion that the Agent had a duty to investigate the accuracy of the dye test, or that she had a duty to provide the Buyer with a written copy of Nolte's report. First, there was no testimony or introduction of other evidence to establish that in 1986, the standard of care in the real estate brokerage business required an agent independently to verify or disclose test results that the broker had not ordered and were not part of the sales purchase agreement. Second, under the circumstances of this case, the Agent would have no reason to know

that the representatives from the Title Company failed to confirm that the dye test was properly executed, before telling her that the test was clean. Third, there was no special relationship among the Buyer, the Agent, the Title Company and the Lender that would require the Agent to undertake such investigation, or that would place the Agent in a superior position to the Buyer in verifying the accuracy of the third party reports of the dye test. *See, e.g., Morena v. South Hills Health System,* 501 Pa. 634, 462 A.2d 680 (1983)(predicating duty on relationship between parties at relevant time, which necessarily requires some degree of knowledge). The dye test was part of the requirement of the Lender's mortgage and it was the Title Company that on two occasions misrepresented facts to both the Agent and the Buyer that the dye test was clear.

The Agent was not acting as a source of information from Sellers or other entity with whom she had an agency relationship and which might then trigger a duty to physically transfer the reports to the Buyer and verify the accuracy of statements that were material to the sales transaction. *See, e.g., Aiello v. Ed Saxe Real Estate,* 508 Pa. at 557–59, 499 A.2d at 284–85 (discussing generally liability of principal and agents in context of real estate agency). She had not assumed the duty of arranging, verifying or investigating the test, and did not act with the pretense of knowledge that the dye test was in fact clear. Instead, the Agent acted as the innocent conduit of information from an apparently reliable source, who said that the dye test was "clear," and the Agent repeated this statement solely in the context of scheduling the closing.

While the Agent did state to the Buyer that there was a clean septic dye test, she had no knowledge to the contrary and she did not know that the representative from the Title Company was providing misinformation. There was nothing in the relationship among the parties that would place the Agent on notice that the information was incorrect and she had no duty to engage in any independent inquiry. There is no record evidence that the Agent had specialized knowledge of septic systems, that she pretended to have such knowledge,

or that she assumed the obligation of guaranteeing or providing this information to the Buyer.

We believe that imposing upon the Agent the duty to investigate, in the unique circumstance of this case, would place too high a burden on real estate agents. It would be an unreasonable burden on them because it would make it their responsibility to guarantee the accuracy of pre-closing tests done by persons with whom they have no relationship. Thus, we hold that a real estate broker has no duty to make an independent investigation of a contractor's report, where the real estate broker did not have any agency or contractual relationship with the third party.

### 3. Innocent Misrepresentation:

A claim for an "innocent" misrepresentation has been recognized in this Commonwealth in order to rescind a real estate transaction that is based upon a material misrepresentation, even if the misrepresentation is innocently made. However, we have found no cases in which this Court adopted this theory as a basis to award monetary damages for tort recovery. *See, e.g., DeJoseph v. Zambelli,* 392 Pa. 24, 139 A.2d 644 (1958); *La Course v. Kiesel,* 366 Pa. 385, 77 A.2d 877 (1951). In *De Joseph,* we set aside a sale because of termite infestation that was concealed from the purchaser. We formulated the cause of action for fraud as follows:

> Where a party is induced to enter into a transaction with another by means of the latter's fraud or material misrepresentation; such a transaction can be avoided by the innocent party. Fraud arises where the misrepresentation is knowingly false, where there is concealment calculated to deceive, or where there is non-privileged failure to disclose. Fraud renders a transaction voidable even where the misrepresentation is not material; **on the other hand, a misrepresentation made innocently is not actionable unless it is material, and in such case there must be a right to reliance.**
>
> 139 A.2d at 647 (Emphasis added).

In *La Course v. Kiesel,* 366 Pa. 385, 77 A.2d 877 (1951), we also set aside a sale, although neither the seller nor the real

estate broker intentionally misrepresented facts to the buyer. In *La Course*, the sellers of real estate engaged an auction company to act as their agent in advertising and selling real estate. One of the sellers told the broker that the property was zoned R–5, which permitted apartments, and the broker advertised the property as "splendid for apartments." Prospective buyers entered an agreement of sale for the property, and then learned that the building lot was not appropriately zoned for apartments. They thus sought an action in equity to cancel the agreement of sale and for a return of their deposit money. The Chancellor entered an Order in favor of the buyers. This Court affirmed although there was no evidence that either the brokers or the owners knew of the restriction on the zoning. We held that:

> whether the auctioneer or owners knew that the representation was false has been repeatedly held in this jurisdiction to be a matter of no consequence. A vendor has no right to make a statement of which he has no knowledge.

> \* \* \*

> A material misrepresentation of an existing fact confers on the party who relies on it the right to rescind whether the defendant here actually knew the truth or not, especially where as here, they had means of knowledge from which they were bound to ascertain the truth before making the representation.

366 Pa. at 388, 389, 77 A.2d at 879, 880. *See also, Boyle v. Odell,* 413 Pa.Super. 562, 605 A.2d 1260 (1992).[11]

 A claim for a misrepresentation, innocently made, to the extent recognized in this Commonwealth, is an equitable doctrine based upon contract principles supporting equitable

---

11. In *Boyle*, a right of first refusal had been granted by seller's mother to neighboring property owners. After the seller's mother was deceased, seller sold property to the buyers, without knowledge of the right of refusal to the third party. The Superior Court determined that even though seller did not know of a right of first refusal, the buyers were entitled to recision of the sale because "fraud may be established where there is a misrepresentation, innocently made, but relating to a matter material to the transaction involved."

recision to make a contract voidable by the innocent party, where appropriate, as set forth in *DeJoseph, supra* and *La Course, supra.* Here, we have not been asked to address the issue of whether this doctrine was viable here, because the Chancellor denied recision, and that determination was not appealed. However, we decline to extend these equitable principles to establish legal tort liability for an innocent misrepresentation of the Agent, where she had no duty to ascertain the accuracy of test results of a third party with whom she had no agency or other relationship. Such strict liability would place too high a burden on the real estate broker.

## III. CONCLUSION

For the reasons set forth in this Opinion, we reverse the Superior Court's determination and hold that Coldwell Banker is not liable to the Buyer for the affirmative misrepresentations of the Agent. The remainder of the Superior Court's Opinion governing the liability of the Title Company and Nolte was not at issue in this appeal.

Justice ZAPPALA did not participate in the consideration or decision of this matter.

Justice NIGRO concurs in the result.

Justice SAYLOR files a concurring opinion.

SAYLOR, Justice, concurring.

I agree with the majority that the factual findings made by the trial court in this case do not support imposition of liability upon Coldwell Banker and therefore concur in the result. I am unable, however, to subscribe to the majority's broad holding that, absent a contractual relationship, a real estate broker has no legal duty to verify factual representations made to a purchaser. In the typical residential real estate transaction, the selling broker, having a pecuniary interest in the consummation of a sale, frequently cultivates reliance by the purchaser upon its professional expertise, representing itself as an accurate source of vital information. *See generally*

P. Murray, *The Real Estate Broker and the Buyer* v. 939, 984 (Sep.1987). It would seem unjust to permit brokers to profit from such arrangements, yet escape any accountability to the purchaser for negligent conduct for the sole reason that their relationship with the buyer is not based in contract. Indeed, as the majority acknowledges, many jurisdictions authorize a cause of action for negligent misrepresentation against a real estate broker without requiring a demonstration of privity. *See, e.g., Mahler v. Keenan Real Estate, Inc.*, 255 Kan. 593, 876 P.2d 609, 616–17 (1994). *See generally* Restatement (Second) of Torts § 552 (providing that one who, in the course of his business, profession or employment supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information); Annotation, "Real–Estate Broker's Liability to Purchaser for Misrepresentation or Nondisclosure of Physical Defects in Property Sold," 46 A.L.R.4th 546 (Supp.1998); PROSSER & KEATON ON THE LAW OF TORTS, § 107, at 746 (5th ed.1984)(stating that "[n]o doubt virtually all courts today would recognize the existence of some situations where the nature of a representer's activity or a pre-existing relationship between the representer and the representee or the two factors together will constitute the basis for the imposition of a duty to exercise reasonable care to avoid harm from reasonable and expectable reliance on what is said at least about certain matters related to the subject matter of the transaction").

Thus, I would not foreclose a cause of action against a broker that negligently provides false material information to a purchaser, represents such information to be true, and induces the purchaser to rely upon the information to his detriment.