OPINION OF THE COURT
GREENBERG, Circuit Judge.
This matter comes on before this Court on an appeal from an order for summary judgment entered in favor of the defendant-appellee Huntington National Bank (“Huntington”) on January 14, 2009, in this action that plaintiff-appellant Martik Brothers, Inc. (“Martik”) brought against Huntington. See Martik Bros., Inc. v. Huntington Nat’l Bank, 2009 WL 89282 (W.D.Pa. Jan.14, 2009) (“Martik”). The action arose from Kiebler Slippery Rock, LLC’s (“Kiebler”) development of a student housing project (“Project”) near Slippery Rock University in Slippery Rock Township, Butler County, Pennsylvania. Huntington financed the Project in accordance with a Construction Loan Agreement with Kiebler dated October 10, 2006, in which Huntington agreed to provide up to $29,521,368 for construction to be secured by two mortgages on the property on which Kiebler was constructing the Project. Martik was Kiebler’s general contractor on the Project pursuant to two contracts it entered into with Kiebler on or *603 about August 29, 2006. Though Huntington made its loan to Kiebler and not to Martik, it disbursed proceeds from the loan by wire transfer directly to Martik upon receipt of Martik’s approved draws as work on the Project progressed.[1]
During the course of the construction financial difficulties arose on the Project that resulted in Huntington not making payments on Martik’s final draw in September 2007. Consequently, Martik initiated arbitration proceedings against Kiebler in accordance with a standard arbitration provision in the construction contracts, and in those proceedings Mar-tik obtained an arbitration award against Kiebler for $2,687,781.38, plus interest and costs to cover the shortfall.[2] Kie-bler, however, is in bankruptcy and has not paid the award. Martik did not have a contract with Huntington and thus ordinarily Martik, as it recognizes, would not be able to look to Huntington for payment on its contracts with Kie-bler even though Huntington had been making payments directly to Martik for its work on the Project.
Nevertheless Martik believes that Huntington is liable to it for an amount equal to the arbitration award as a consequence of certain representations that Huntington made to Martik. In this regard it is undisputed for purposes of these summary judgment proceedings that Martik expressed its concerns about payment to Richard Dexter, a Huntington construction risk manager, on three occasions.[3] The first of the occasions followed a meeting regarding the Project in June 2007 at which Kiebler, Martik and Huntington were represented. Prior to that meeting Huntington had for a number of months been aware of financial difficulties on the Project and the meeting was held to address that situation. Following the meeting, Frank Martik, Martik’s representative at the meeting, asked Dexter who was present with another of Huntington’s representatives, whether Martik would have anything to worry about with respect to payment to it. Dexter said “No. There’s nothing to worry about.” App. at 171. The other Huntington representative present did not contradict Dexter on this point. Notwithstanding Dexter’s assurances to Frank Martik on the day of the meeting, Frank Martik obviously was uneasy, as it later turned out with good reason, for the next business day he called Dexter and again asked him if Kiebler had sufficient funds left in the loan to pay Martik for the remainder of the work under its contracts. Dexter answered “yes.”
Dexter’s assurances, however, were misplaced because in September 2007, on the third occasion when Frank Martik asked Dexter about payment for Martik’s work on the Project, at a time by which Martik *604 substantially had finished its work but had not been paid on its final draw, Dexter told him that there were not sufficient funds to cover the draw. Frank Martik during his deposition indicated that if Dexter had told him in June that the funds were not sufficient to pay Martik it would have pulled off the job. Instead, Martik remained on the job, which now has been completed, and Martik thereby became entitled to substantial additional payments on its construction contracts as evidenced by the arbitration award.[4] Significantly, notwithstanding Dexter’s assurances to Frank Martik in June 2007, when Dexter told Frank Martik that there were sufficient funds to pay Martik, Dexter’s contemporaneous internal Construction Monitoring Report showed that there was a shortfall of $1,077,000 dollars on the Project. Dexter, however, did not advise Frank Martik of the shortfall or of the report.
By reason of its final draw on the Project not having been paid, Martik brought this action against Huntington advancing three theories in support of its claim with which we are concerned on this appeal. First, Martik contended that Huntington made misrepresentations regarding the availability of funding under the construction loan to pay Martik and the misrepresentations caused Martik to continue work on the Project and thereby become enti-tied to payments which have not been made. Second, Martik contended that it detrimentally relied on Huntington’s promises and stayed on the Project and thus Huntington, by reason of a legal theory predicated on promissory estoppel, is liable for an amount equal to the arbitration award.[5] Third, Martik contended that Huntington was unjustly enriched at Mar-tik’s expense and therefore is liable to Martik.[6] Martik, 2009 WL 89282, at *1.
After completion of discovery, Huntington successfully moved for summary judgment against Martik. In its opinion granting that motion the District Court explained that the elements of the tort of intentional misrepresentation under the applicable Pennsylvania law are a misrepresentation which is material to the transaction at hand made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; with the intent of misleading another into relying on it; justifiable reliance on the misrepresentation; and a resulting injury being proximately caused by the reliance. Martik, 2009 WL 89282, at *6. See Bortz v. Noon, 556 Pa. 489, 729 A.2d 555, 560 (1999); Gibbs v. Ernst, 538 Pa. 193, 647 A.2d 882, 889 (1994). The District Court then set forth more completely than we have done the history of the events leading to this litigation including the two statements *605 that Dexter made to Frank Martik in June 2007 regarding the availability of funding and the circumstance that Dexter by that time had concluded that there was a financial shortfall on the Project.
The District Court concluded from the facts that:
It is doubtful that Mr. Dexter’s rather casual statements themselves or any other evidence adduced by Martik can support an inference that the representations were made falsely, with knowledge of their falsity or recklessness as to whether they were true or false, or that Martik would be justified in relying on such informal and non-specific conversations to assure it that there were sufficient funds to complete the project and pay Martik in full. [Huntington] offers evidence to support its contention that Mr. Dexter reasonably believed that there would be sufficient funding because, as Martik knew, Kiebler was looking for another source of funding, and that his statements were therefore true.
Martik, 2009 WL 89282, at *7. The District Court then went on to explain that:
But even if the Court found a genuine issue of material fact on these elements of the common law tort of intentional misrepresentation, Martik’s claim must fail in the complete absence of any evidence that might reasonably support an inference that Dexter’s statements were made with the intent of misleading Mar-tik into relying on it and induce it to finish a project it otherwise would not have. In lieu of actual evidence of intent, Martik merely speculates that Dexter and [Huntington] must have intended to mislead and induce Martik’s reliance, extrapolating such intent from the fact that they were aware of funding shortfalls before the statements were made. Interestingly, although Martik claims that Frank Martik ‘would have pulled off and cut our losses’ if Dexter’s answer had been ‘no,’ Martik does not aver that it communicated that to [Huntington],

Id.

After the District Court rejected Mar-tik’s misrepresentation claim,[7] it held that Martik could not recover on a detrimental reliance theory which it indicated is the equivalent of a claim predicated on promissory estoppel. Id. at *8. See Lehigh Valley Hosp. v. County of Montgomery, 768 A.2d 1197, 1200 (Pa.Commw.Ct.2001). In reaching this conclusion the District Court pointed out that Dexter merely said that there was adequate funding for the Project but that “Dexter’s responses to Martik cannot be construed as a promise by [Huntington] to pay Martik for its work performed for Kiebler, nor can it be deemed a guarantee or a loan commitment.” Martik, 2009 WL 89282, at *8. Though we do not agree with some aspects of the District Court’s detrimental reliance discussion that we have not quoted, we do agree with the language we quote on this point and thus we will not reverse on the basis of Martik’s detrimental reliance theory or address that theory any further in this opinion.
*606 The District Court also rejected Mar-tik’s unjust enrichment claim which it explained was “a synonym for quantum me-ruit,” Martik, 2009 WL 89282, at *9. See Mitchell v. Moore, 729 A.2d 1200, 1202 n. 2 (Pa.Super.Ct.1999). We agree with that disposition because the only thing of value that Huntington can be said to have received from Martik that could support a claim against it predicated on an unjust enrichment theory was the advantage to Huntington of having the Project completed thereby making its mortgage loans on the property more secure. But Martik does not contend on this appeal, and so far as we are aware did not contend in the District Court, that Huntington did not advance the funds that it agreed to supply when it entered into the Construction Loan Agreement with Kiebler and thus we are satisfied that Huntington has paid what it agreed to pay for the value of Martik’s performance under the construction contracts. Therefore Martik’s unjust enrichment claim must fail. See Meyers Plumbing and Heating Supply Co. v. West End Fed. Sav. and Loan Ass’n, 345 Pa.Super. 559, 498 A.2d 966, 969 (1985). In any event, at oral argument in our Court Mar-tik acknowledged that its unjust enrichment claim did not add anything to its misrepresentation claim. Thus, we do not address the unjust enrichment claim further.
Martik now appeals from the order of January 14, 2009.[8] The District Court had jurisdiction in this diversity of citizenship action pursuant to 28 U.S.C. § 1332 and we have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review on this appeal and thus we can affirm only if there is no genuine issue as to any material fact and Huntington is entitled to judgment as a matter of law. See Santos ex reí. Beato v. United States, 559 F.3d 189, 193 (3d Cir.2009); Fed.R.Civ.P. 56(e).[9]
Though we agree with the District Court’s statement of Pennsylvania law setting forth the elements of the tort of intentional misrepresentation, we are satisfied that the Court should not have granted summary judgment to Huntington to the extent that the Court rejected that theory. We, however, supplement the Court’s statement of the law by observing that Martik, in addition to asserting that Huntington intentionally misrepresented the facts, may have intended to contend that Huntington was guilty of negligent misrepresentation which, rather than requiring that the declarant actually know of the falsity of its statement, merely should have known of its falsity. See Bortz v. Noon, 729 A.2d at 561.
In explaining the reasons for our conclusion we start off by pointing out that notwithstanding the District Court’s characterization of Dexter’s statements as “rather casual,” we see nothing casual about Dexter’s two June 2007 statements when they are considered together. Though it is true that Frank Martik’s original inquiry of Dexter with respect to Martik being paid followed a more formal meeting and thus standing alone might be regarded as casual, there was nothing casual when he called Dexter the next day and again asked about the sufficiency of the funds to pay Martik. Arguably it *607 should have been obvious to Dexter at that point that Martik had real concerns about getting paid and was, quite understandably, inquiring about being paid from the source of the funds being paid to it. In this regard we reiterate that Huntington had been disbursing proceeds from the construction loan directly to Martik so it was logical for Martik to ask Huntington about the availability of additional funds.
Moreover, although we certainly do not preclude the trier of the fact on the remand that will follow this opinion from concluding that Dexter believed what he said about the availability of sufficient funding to pay Martik, clearly the evidence supports an inference that Dexter knew that his statements that there was sufficient funding were false or reckless, or at a bare minimum so doubtful that a jury could believe that he was negligent when he expressed them. In this regard we reiterate that at the same time that Dexter was making the statements assuring Frank Martik that the funds were available to pay Martik, Dexter had concluded that there was a shortfall of $1,077,000 on the Project, a conclusion he memorialized in a contemporaneous internal Huntington report. Moreover, we reject the District Court’s view that its grant of summary judgment was justified inasmuch as Dexter “reasonably believed that there would be sufficient funding” because “Kiebler was looking for another source of funding.” Martik, 2009 WL 89282, at *7. After all, the record does not demonstrate that Dexter had any way of knowing if Kiebler would obtain that funding. In any event, arguably it should have been clear from the two conversations considered together that Frank Martik was not asking Dexter whether the funding to pay Martik would be there in the future. He was asking if it was there.
In reaching our conclusion we have not overlooked the District Court’s conclusion that it is doubtful that Martik justifiably could rely on the “non-specific conversations” between Frank Martik and Dexter. Rather, we cannot understand what was not specific in Frank Martik’s inquiries as to whether there was funding to pay Mar-tik and Dexter’s answers that the funding was there. Indeed, it is difficult to understand how Frank Martik’s questions and Dexter’s answers could have been more specific.
We also reject the District Court’s view that Martik’s claim must fail because there was no evidence to support an inference that Dexter intended to mislead Martik and thereby induce it to finish the Project even though funds to pay it were not available. Quite to the contraiy, we cannot help but wonder what the District Court thought Dexter believed would have happened if he had told Frank Martik that, as proved to be the case, there was not sufficient funding to pay Martik for its work, or if he said that he did not know if there was sufficient funding for that purpose. Surely Dexter had to believe that if Martik doubted that it would be paid it would not complete the Project.
We recognize that the District Court correctly points out that Frank Martik did not tell Dexter that Martik would pull off the job if the funding was not there, but Frank Martik had no reason to do so because Dexter said that the funding was there. Accordingly, though the District Court found that this point regarding Frank Martik not telling Dexter that without an assurance of payment Martik would leave the job was “interesting[ ],” it is without significance because the evidence at least supports and probably compels that an inference be drawn that Dexter was trying to keep Martik on the job. How could the evidence not support that *608 inference for surely, as Dexter was well aware, it was in Huntington’s interest that Martik finish the Project and thereby enhance the value of Huntington’s security?
In its brief Huntington heavily relies on its contention that “Dexter’s alleged representations regarding whether Kiebler has sufficient funds to pay Martik ... are expressions of opinion and not statements of existing fact.” Appellee’s br. at 11. On the basis of that contention any statement of fact can be repackaged as an opinion. Huntington was financing the Project and was closely monitoring the use of the funds it was advancing. Frank Martik asked Dexter point blank as the construction was nearing its conclusion whether Kiebler had sufficient funds to pay Martik, and Dexter gave an unequivocal answer of “yes.” Thus, Dexter did not hedge his answer in the slightest and say, for example, “I think so.” If the bank financing the Project did not know the answer to Frank Martik’s question then who would? On these summary judgment proceedings we must regard the record as supporting a conclusion that Martik had every right to regard Dexter’s statements as setting forth a fact, not an opinion. Dexter’s statements cannot be equated to a stock broker’s opinion of what a security will be worth at some future date. Frank Martik was inquiring whether the funding was there, not whether Kiebler could raise the money to pay Martik.
For the foregoing reasons the order of January 14, 2009, will be reversed and the case will be remanded to the District Court so that Martik may proceed on its misrepresentation claim.

. In its brief Martik explains that "[t]he parties agreed that Martik would send [its] pay applications directly to Monica Butko, senior account relationship associate for Huntington, with copies of the pay applications to Richard Dexter, construction risk manager for Huntington, and Paul Kiebler." Appellant's br. at 5. As a matter of convenience we refer to the pay applications as "draws” as does Huntington in its brief.

. Martik filed a petition to confirm the arbitration award in the Common Pleas Court of Washington County, Pennsylvania, but Kie-bler removed the proceedings to the District Court. The parties in their briefs do not tell us the status of those proceedings.

.Huntington does not contend that notice to Dexter was not notice to Huntington. Richard Dexter testified during his deposition that he did not recall the first two conversations though he does not deny that they took place. Notwithstanding Dexter's lack of memory, Huntington indicates that it "disputes the existence and contents of these communications, but for purposes of the appeal, [it] understands that the Court must consider the facts in the light most favorable to Mar-tik. ..." Appellee's br. at 4 n. 1.

. Martik asserts that in reliance on Dexter’s representations it "continued to perform construction on the Project while incurring additional costs, which resulted in an outstanding unpaid contract balance of $2,120,003.75." Appellant's br. at 23-24.

. We think that it would be incorrect to characterize Martik’s damages claim as asserting that Huntington was liable for the arbitration award, inasmuch as the award included the amount for which Kiebler was liable under its construction contracts with Martik and, as we have explained, Huntington is not liable under the contracts. Rather, Martik is seeking to recover its losses from Huntington on the basis of a tort claim against Huntington. We express no opinion on what the effect will be on Marlik's arbitration award if it makes a recovery against Huntington though we recognize that Huntington may seek to subordinate to the arbitration award to the extent, if any, that it makes payments to Martik.

.Martik also alleged that it was a third party beneficiary of the Kiebler-Hunlington Construction Loan Agreement, but the District Court rejected that theory. See Martik, 2009 WL 89282, at *4-6. Martik does not advance this contention in this Court so we do not address it.

. Martik advances in this Court claims of both intentional and negligent misrepresentation. The District Court, however, addressed a claim of intentional misrepresentation but not negligent misrepresentation in granting summary judgment to Huntington, Martik, 2009 WL 89282, at *6-8, possibly because as Huntington contended in the District Court, Mar-tik's complaint arguably did not state a claim for negligent misrepresentation. At this time, however, we need not decide whether Martik adequately pled negligent misrepresentation, though the District Court can consider that question on remand if it necessary to do so. Of course, we do not preclude Martik from seeking on the remand to amend its complaint to assert a claim predicated on negligent misrepresentation.

. The District Court also granted Huntington's uncontested motion for summary judgment for indemnification against third party defendant Kiebler for any judgment that Mar-tik obtained against Huntington. We, however, are not concerned with the third party proceedings on this appeal and thus make no further reference to them.

. It should be understood that our factual recitations with respect to the events in this case are only for purposes of this appeal from the grant of summary judgment. We do not suggest that we are binding the District Court or a jury on remand to any factual conclusion that we set forth now on the basis of the record before us.