Richard Ralph FEUDALE, Petitioner

v.

AQUA PENNSYLVANIA, INC. and Department of Conservation and Natural Resources of the Commonwealth of PA, Respondents.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 24, 2014.

Decided July 22, 2015.

Richard R. Feudale, Mount Carmel, for petitioner.

Mark C. Baldwin, Assistant Counsel, Harrisburg, for respondent Department of Conservation and Natural Resources.

Stephen Moniak, Harrisburg, for respondent Aqua Pennsylvania, Inc.

BEFORE: RENÉE COHN JUBELIRER, Judge, P. KEVIN BROBSON, Judge, ROCHELLE S. FRIEDMAN, Senior Judge.

OPINION BY Judge P. KEVIN BROBSON.

Before the Court are separate preliminary objections of Aqua Pennsylvania, Inc.

(Aqua) and the Department of Conservation and Natural Resources (DCNR) (collectively, Respondents), to a complaint filed *pro se* by Richard Ralph Feudale (Feudale) in this Court's original jurisdiction. For the reasons discussed below, Respondents' preliminary objections are sustained.

On May 23, 2014, Feudale filed a complaint and motion for preliminary injunction[1] in the Court of Common Pleas for Northumberland County against Aqua and DCNR. Aqua provides water services to more than 1.4 million residents in 30 counties, including the residents of its Roaring Creek/Susquehanna division in parts of Adams, Bradford, Columbia, Cumberland, Juniata, Northumberland, Schuylkill, and Snyder Counties. DCNR is the administrative agency charged with maintaining, preserving, and managing state parks and state forests, among other duties. The Commonwealth acquired the Roaring Creek Tract of Weiser State Forest in 2003, and DCNR now manages it as part of the state forest system. Aqua acquired the water rights in the Roaring Creek Tract prior to the Commonwealth's acquisition of the property and now holds an easement for those water rights on the Roaring Creek Tract.

As alleged in the complaint, this action arises, in part, out of Feudale's objections to Aqua's replacement of a century-old, gravity-fed waterline that runs through certain lands situated in Northumberland and Columbia Counties, now owned and managed by DCNR. Specifically, Feudale takes issue with the proposed location of the replacement waterline and the prospective logging and earthmoving activities that will be associated with the project. Feudale also objects to DCNR's timbering and forest regeneration/preservation activities currently being conducted within the same vicinity—*i.e.,* the Roaring Creek Tract. Feudale alleges that the activities undertaken by Aqua and DCNR affect "a uniquely picturesque and accessible part" of the Roaring Creek Tract, and that Aqua's plan would destroy a large swath of scenic forest and result in the degradation of the area's natural and historic aesthetic.

Feudale alleges that the waterline replacement and timbering activities are being carried out in disregard of the environmental impact and without the proper permits and approvals. As a result, Feudale makes the following claims in his complaint: (1) misrepresentation (against Aqua); (2) improper management of the Roaring Creek Tract under the History Code[2] and Article I, Section 27 of the Pennsylvania Constitution[3] (against both Respondents); (3) punitive damages (against Aqua); and (4) permanent injunction (against both Respondents).

By order dated June 18, 2014, this matter was transferred from the Court of Common Pleas for Northumberland County to this Court's original jurisdiction. Both Aqua and DCNR separately filed preliminary objections on June 23, 2014.

---

1. A hearing on Feudale's motion for a preliminary injunction was held on August 19, 2014, after which this Court denied Feudale's motion. Thus, only Respondents' preliminary objections are currently before this Court.

2. 37 Pa.C.S. §§ 101–906.

3. This section is known as the Environmental Rights Amendment. It provides:

The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people. Pa. Const. art. I, § 27.

Aqua asserted the following preliminary objections: (1) failure to exhaust administrative remedies; (2) failure to state a claim for damages; (3) failure to state a claim for misrepresentation; and (4) failure to state a claim for a permanent injunction. DCNR's preliminary objections asserted (1) failure to exhaust administrative remedies; (2) failure to state a claim under the Environmental Rights Amendment; (3) legal insufficiency based upon sovereign immunity; (4) lack of standing; (5) failure to allege the facts necessary to defeat sovereign immunity; and (6) failure to state a claim for permanent injunction.

▆ When ruling on preliminary objections, this Court must accept as true all well-pleaded allegations of material fact in the complaint, as well as all reasonable inferences that flow from those facts. *Funk v. Dep't Envtl. Prot.,* 71 A.3d 1097, 1101 n. 4 (Pa.Cmwlth.2013). "The Court, however, is not required to accept as true conclusions of law, unwarranted factual inferences, argumentative allegations, or expressions of opinion." *Id.* ·

▆ Both Aqua and DCNR assert that Feudale has failed to exhaust his administrative remedies:

The doctrine of exhaustion of administrative remedies requires that a person challenging an administrative decision must first exhaust all adequate and available administrative remedies before seeking relief from the courts. The purposes of this exhaustion requirement are to prevent premature judicial intervention in the administrative process and ensure that claims will be addressed by the body with expertise in the area.

*Id.* at 1101 (internal citations omitted). This includes constitutional claims that only challenge the application of a regulation, as well as claims for declaratory or injunctive relief. *Id.* at 1101–02.

Title 25 of the Pennsylvania Code requires a National Pollutant Discharge Elimination System (NPDES) permit to be obtained for projects resulting in one or more acres of earth disturbance. 25 Pa. Code § 92a.32. The NPDES permitting process involves consideration of many environmental concerns, including erosion and sedimentation concerns, riparian buffer requirements, and water pollution. *See* 25 Pa.Code § 92a.21. NPDES permits are issued by the Department of Environmental Protection (DEP) (*see* 25 Pa.Code § 92a.21), and the DEP's decision to issue the permit is appealable to the Environmental Hearing Board (EHB). *See Funk,* 71 A.3d at 1101 ("The legislature has provided an administrative remedy for challenging decisions of DEP: appeal to the EHB.").

There is no dispute that Aqua's waterline replacement project required an NPDES permit. Aqua applied for the required NPDES permit, and notice of the permit application was published in the Pennsylvania Bulletin on June 30, 2012 (Vol. 42, No. 26). (Aqua's Br., Ex. 1, p. 3763.)[4] The notice provided for a 30–day public comment period and noted that a public hearing may be requested on any application. (Aqua's Br., Ex. 1, p. 3753.) Feudale, as admitted in his response to Aqua's preliminary objections, did not participate in the public comment period or request a public hearing before the DEP.

---

4. To the extent Feudale suggests that publication in the Pennsylvania Bulletin is insufficient to apprise interested parties of NPDES permit application and approvals, we note that this Court has previously determined such notice to be sufficient. *See Grimaud v.*

*Dep't of Envtl. Res.,* 161 Pa.Cmwlth. 647, 638 A.2d 299, 301–02 (1994) (rejecting argument that notice of NPDES permit published in Pennsylvania Bulletin was insufficient because "it is a 'fiction' that the public reads that publication").

(Feudale's Response to Aqua's Prelim. Objections, ¶ 12.) The DEP granted Aqua's NPDES permit on April 11, 2013. (Aqua's Prelim. Objections, Ex. 1.) Feudale did not, at any time, appeal the DEP's issuance of the permit to the EHB. (Feudale's Response to Aqua's Prelim. Objections, ¶ 25.)

At its core, Feudale's claim against Aqua is that the DEP improperly granted the NPDES permit. He cites a long list of challenges to the issuance of the permit, from failure to properly consider the project's aesthetic impact to the inclusion of allegedly false and misleading information in the permit application.[5] The omphalus of this action, however, is a challenge to Aqua's waterline replacement project, for which Aqua sought and received the appropriate permit from the DEP. As such, Feudale was required to exhaust his administrative remedies before seeking redress through this Court. Because Feudale did not appeal to the EHB, he has not exhausted his administrative remedies and is, thus, barred from challenging that action in this Court.

Feudale argues that he was not required to appeal to the EHB because the EHB cannot grant a permanent injunction. This Court, however, has held that "where the legislature has provided an administrative procedure to challenge and obtain relief from an agency's action, failure to exhaust that remedy bars this Court from hearing claims for declaratory or injunctive relief with respect to that agency action." *Funk*, 71 A.3d at 1101. Thus, Feudale's request for a permanent injunction does not eliminate his responsibility to appeal the DEP's issuance of the permit to the EHB.

To the extent Feudale contends he was not required to appeal to the EHB because his claims against Aqua originate in the Environmental Rights Amendment or the History Code, these claims are without foundation, as Aqua is not a Commonwealth entity and thus not a trustee under the Environmental Rights Amendment or owner of a historic resource and thus subject to the History Code. The plain language of the Environmental Rights Amendment charges the Commonwealth, as trustee, with the duty to conserve and maintain Pennsylvania's public natural resources, and we are unaware of any case law applying this duty to non-Commonwealth entities. *See Robinson Twp. v. Commonwealth*, 623 Pa. 564, 83 A.3d 901, 953 (2013) (plurality) (noting that Environmental Rights Amendment "protects the people from governmental action").[6] The

---

**5.** Feudale purports to state a claim for intentional misrepresentation based upon information in Aqua's NPDES permit that he alleges Aqua knew was false. A claim for intentional misrepresentation requires justifiable reliance on the false information by the injured party. *Bortz v. Noon*, 556 Pa. 489, 729 A.2d 555, 560 (1999). Feudale has not alleged any justifiable reliance on his part on the information contained in Aqua's NPDES permit application, nor could he, as the alleged false representation was not made to him, but instead to the DEP. Feudale does not cite, and we are unaware of, any authority which would allow a third party to recover for a misrepresentation made to and relied upon by another party. Feudale has, therefore, failed to state

a claim for intentional misrepresentation for which relief can be granted.

**6.** This Court has previously explained:

Part III of the Pennsylvania Supreme Court's lead opinion in *Robinson Township*, authored by Chief Justice Castille, garnered the support of only two joining justices, Justices Todd and McCaffery. Part III, therefore, represents a plurality view of the Supreme Court. The legal reasoning and conclusions contained therein are thus not binding precedent on this Court. Nonetheless, in reviewing the accompanying minority opinions, it does not appear that any of the concurring and dissenting justices disputed the plurality's

History Code provides for the preservation of historic resources, public records, historic documents and historic objects, as well as the identification, restoration, and preservation of historic sites and structures. Section 102 of the History Code, 37 Pa.C.S. § 102. Assuming for the sake of argument that the Roaring Creek Tract is a historic resource as defined in the History Code, 37 Pa.C.S. § 103, Aqua is neither the owner of the property nor the Pennsylvania Historical and Museum Commission charged with the preservation of historic resources, *see* 37 Pa.C.S. § 301. Being neither, Feudale cannot maintain an action under the History Code against Aqua.[7]

The essence of Feudale's claims against DCNR is that DCNR is not doing enough to conserve and protect Pennsylvania's natural resources, in particular, the Roaring Creek Tract. If DCNR were really protecting Pennsylvania's natural resources, Feudale argues, DCNR would not have approved timbering in the Roaring Creek Tract. To the extent Feudale's claims against DCNR relate to Aqua's waterline replacement project, they too are barred by Feudale's failure to exhaust his administrative remedies. To the extent his claims relate to timber sales made by DCNR in the Roaring Creek Tract, Feudale has failed to state a claim for which relief can be granted under either the Environmental Rights Amendment or the History Code.

The Environmental Rights Amendment "requires each branch of government to consider in advance of proceeding the environmental effect of any proposed action" on Pennsylvania's public natural resources. *Robinson Twp.*, 83 A.3d at 952 (plurality). The Environmental Rights Amendment "protects the people from governmental action that *unreasonably* causes actual or likely deterioration" of the public natural resources. *Id.* at 953 (emphasis added). The Environmental Rights Amendment was not intended to "deprive persons of the use of their property or to derail development leading to an increase in the general welfare, convenience, and prosperity of the people." *Id.* at 954. It does, however, require that economic development not take place at the expense of an "*unreasonable* degradation of the environment." *Id.* (emphasis added). Furthermore, with respect to the environment, "the state's plenary police power ... must be exercised in a manner that promotes sustainable property use and economic development." *Id.* Thus,

> [t]he Environmental Rights Amendment does not call for a stagnant landscape; nor, as we explain [above], for the derailment of economic or social development; nor for a sacrifice of other fundamental values. But, when government acts, the action must, on balance, reasonably account for the environmental features of the affected locale, ... if it is to pass constitutional muster.

---

construction of the Environmental Rights Amendment, including the rights declared therein and attendant duties imposed thereby on the Commonwealth.... For our purposes, we find the plurality's construction of Article I, Section 27 persuasive only to the extent it is consistent with binding precedent from this Court and the Supreme Court on the same subject.
*Pennsylvania Envtl. Def. Found. v. Commonwealth*, 108 A.3d 140, 156 n. 37 (Pa.

Cmwlth.2015) (en banc) (internal citations omitted).

7. Although Feudale cites Section 512 of the History Code, 37 Pa.C.S. § 512, for the proposition that he is a proper party to bring suit, Feudale cites to no corresponding section or case law which would allow him to bring suit against Aqua, rather than the Commonwealth or the Pennsylvania Historical and Museum Commission, under the History Code.

*Id.* at 953. In sum, the Environmental Rights Amendment "do[es] not require a freeze of the existing public natural resource stock; rather, ... the duties to conserve and maintain are tempered by legitimate development tending to improve upon the lot of Pennsylvania's citizenry, with the evident goal of promoting sustainable development." *Id.* at 958.

The Environmental Rights Amendment's protections may be enforced by citizens bringing suit in the appropriate forum, including the courts. *Id.* at 957. But, as this Court has explained,

> merely to assert that one has a common right to a protected value under the trusteeship of the State, and that the value is about to be invaded, creates no automatic right to relief.... The Commonwealth as trustee, bound to conserve and maintain public natural resources for the benefit of all the people, is also required to perform other duties, such as the maintenance of an adequate public highway system, also for the benefit of all the people.

*Pennsylvania Envtl. Def. Found. v. Commonwealth,* 108 A.3d 140, 158–59 (Pa. Cmwlth.2015) (en banc) (*PEDF*) (quoting *Payne v. Kassab,* 468 Pa. 226, 361 A.2d 263, 273 (1976)). Thus, this Court has developed a balancing test to determine if a proposed action violates the Environmental Rights Amendment:

> (1) Was there compliance with all applicable statutes and regulations relevant to the protection of the Commonwealth's public natural resources? (2) Does the record demonstrate a reasonable effort to reduce the environmental incursion to a minimum? (3) Does the

environmental harm which will result from the challenged decision or action so clearly outweigh the benefits to be derived therefrom that to proceed further would be an abuse of discretion?

*Id.* at 158 (quoting *Payne v. Kassab,* 11 Pa.Cmwlth. 14, 312 A.2d 86, 94 (1973) (en banc) (*Payne I* ), *aff'd,* 468 Pa. 226, 361 A.2d 263 (1976)).[8]

Feudale has made an impassioned, sometimes rambling, argument for prohibiting all non-recreational activity on the Roaring Creek Tract. The Environmental Rights Amendment, however, does not require DCNR to prohibit all such actions. Rather, the Environmental Rights Amendment requires DCNR to first take into consideration the environmental impact of proposed actions. *See Robinson Twp.,* 83 A.3d at 952 (plurality). Feudale has failed to specifically allege that DCNR did not comply with all applicable statutes and regulations, or that DCNR failed to keep the environmental impact to a minimum. *See PEDF,* 108 A.3d at 158. Except for his oft-stated opinion about the aesthetic value of the Roaring Creek Tract, Feudale has not alleged any facts suggesting that the "environmental harm which will result from the [timbering] so clearly outweighs the benefits to be derived therefrom that to proceed further would be an abuse of discretion." *Id.; see also Funk,* 71 A.3d at 1101 n. 4 ("This Court, however, is not required to accept as true ... expressions of opinion."). Merely alleging that DCNR's proposed action will do harm to the Roaring Creek Tract is insufficient to establish a claim under the Environmental Rights Amendment. *See PEDF,* 108 A.3d at 158–59.[9]

---

**8.** This Court also noted that although the plurality in *Robinson Township* took issue with this test, *Payne I* remains binding precedent on this Court until overruled by either a majority opinion of the Supreme Court or an en

banc panel of this Court. *PEDF,* 108 A.3d at 159.

**9.** Although Feudale invokes the History Code in his complaint, he alleges no facts specific

For the reasons discussed above, the preliminary objections of the Respondents are hereby sustained, and Feudale's complaint is dismissed.[10]

### ORDER

AND NOW, this 22nd day of July, 2015, the preliminary objections of Aqua Pennsylvania, Inc. and the Department of Conservation and Natural Resources are hereby SUSTAINED and the complaint is DISMISSED.

to any cause of action under the History Code and fails to allege any facts which would establish his right to relief under the History Code. Feudale has, therefore, failed to state a claim upon which relief can be granted.

10. Because Feudale's claims for damages and a permanent injunction are dependent upon his other claims for misrepresentation and violation of the Environmental Rights Amendment and History Code, we need not address them here. Furthermore, we need not address the remainder of Respondents' preliminary objections, as those discussed above are sufficient to dismiss the entirety of Feudale's complaint.