STATE COLLEGE AREA SCHOOL DISTRICT, Plaintiff,

v.

ROYAL BANK OF CANADA, Defendant/Third–Party Plaintiff,

v.

Rhoads & Sinon LLP and Miller, Kistler, Campbell, Miller, Williams, and Benson, Inc., Third–Party Defendants.

No. 4:10–CV–1823.

United States District Court, M.D. Pennsylvania.

Nov. 18, 2011.

Steven Maniloff, Montgomery, McCracken, Walker & Rhoads, LLP, Philadelphia, PA, Louis R. Moffa, Jr., Montgomery, McCracken, Walker & Rhoads, LLP, Cherry Hill, NJ, for Plaintiff.

Sara A. Frey, Cozen O'Connor, John V. Donnelly, III, Philadelphia, PA, for Defendant/Third–Party Plaintiff.

## MEMORANDUM & ORDER

JOHN E. JONES III, District Judge.

## I. INTRODUCTION

Before the Court in this declaratory judgment action are the Rule 12(b)(6) Motion to Dismiss and, alternatively, Rule 14(a)(4) Motion to Strike, (Doc. 40), of Third–Party Defendant Miller, Kistler, Campbell, Miller, Williams, and Benson, Inc. ("Miller Kistler") and the Rule 12(b)(6) Motion to Dismiss and, alterna-

tively, Rule 14(a)(4) Motion to Strike, (Doc. 41), of Third–Party Defendant Rhoads and Sinon, LLP ("Rhoads"). Both Motions have been fully briefed and are therefore ripe for disposition. For the reasons articulated herein, the Court will grant Third–Party Defendant Miller Kistler's Motion to Dismiss and deny Third–Party Defendant Rhoads' Motion to Dismiss.

## II. PROCEDURAL HISTORY & STATEMENT OF FACTS

This action arises out of a dispute between State College Area School District ("SCASD") and Royal bank of Canada ("Royal Bank") in the form of a declaratory judgment action relating to the validity and enforceability of a swap agreement ("Agreement") transaction. The pertinent facts as pled in the Third–Party Complaint are known well to all parties thereto and thus we shall only briefly recite them herein. In accordance with the standard of review applicable to a motion to dismiss, the following facts are derived from Third–Party Plaintiff Royal Bank's Third–Party Complaint and viewed in the light most favorable to the Third–Party Plaintiff.

In 2004, SCASD developed a capital improvement project and, in relation thereto, incurred debt under the Local Government Unit Debt Act ("LGUDA"), 53 Pa.C.S. § 8001–8271, in the amount of $58,050,000.[1] Doc. 22, ¶ 20. In connection therewith, SCASD requested that an indirect subsidiary of Royal Bank enter into a forward bond purchasing agreement with it, which the subsidiary did. *Id.* On April 25, 2006, the parties to the underlying action, SCASD and Royal Bank of Canada ("Royal Bank"), entered into a forward-

starting fixed-pay or swap agreement ("2006 Contract"), the financial intricacies of which are known well by the parties and need not be detailed herein for purposes of resolving the instant motions. *Id.* at ¶ 1.

Third–Party Defendant Rhoads served as bond counsel to SCASD in connection with the Agreement. Doc. 22, ¶ 3. In connection with its role as bond counsel, Rhoads was paid $100,000. *Id.* at ¶ 6. In its capacity as bond counsel, Rhoads issued an opinion letter ("Rhoads' Letter"), addressed to Royal Bank, SCASD, and Miller Kistler, representing that the 2006 Contract was valid and enforceable and represented a binding obligation of SCASD. *Id.* at ¶ 5; Doc. 41–1, p. 3. Specifically, the Rhoads' Letter stated that the 2006 Contract "has been duly executed and delivered by [SCASD] and constitutes a legal, valid, and binding obligation of [SCASD]." Doc. 22, ¶ 27; Doc. 41–1, p. 3.

Third–Party Defendant Miller Kistler served as SCASD's solicitor in connection with the Agreement. Doc. 22, ¶ 4. For its role as solicitor, Miller Kistler was paid $20,000. *Id.* at ¶ 5. As solicitor, Miller Kistler issued an opinion letter ("Miller Letter"), addressed to Royal Bank, SCASD, and Rhoads, representing that the "execution and delivery of the [2006 Contract] and the performance of [SCASD's] obligations under the [2006 Contract] do not contravene: (i) any law, statute, rule or regulation to which [SCASD] is subject...." Doc. 22, ¶ 33; Doc. 40, Ex. A, p. 2.

On November 13, 2007, SCASD requested that the parties amend the 2006 Con-

---

**1.** In accordance with LGUDA, a municipality "incurs" debt when it receives approval from the Department of Community and Economic Development to issue that debt. Thus, incurrence of debt does not necessarily mean that the bonds or other debt were, in fact, issued, but only that the municipality has the authority to do so. *See* 53 Pa.C.S. § 8002 (2011) (defining "incurred" as the "point in time when ... the resolution authorizing the debt has been finally enacted or adopted").

tract, and the parties executed the amendment ("2007 Amendment"). Doc. 22, ¶ 2. The 2007 Amendment altered the 2006 Contract by postponing the start date for swap payments from the original date of December 1, 2007, to December 1, 2010; as a result of delaying the start of payments, the 2007 Amendment also reduced the notational amount of the transaction and increased the interest rate. *Id.* The terms of the 2007 Amendment provided that it "supplements, forms part of, and is subject to the [Agreement] dated as of 25 Apr 2006." *Id.*

Both Third–Party Defendants were again involved in assisting SCASD throughout the amendment process, although opinion letters were not issued. Doc. 22, ¶¶ 29, 31. Rhoads was paid $25,000 for its services in connection with the 2007 Amendment, *id.* at ¶ 31, and Miller Kistler received $15,000 in compensation for its services. *Id.* at ¶ 36. Neither Rhoads nor Miller Kistler advised Royal Bank that any further steps were necessary to effectuate either the 2007 Amendment or the 2006 Contract after the 2007 Amendment was executed. *Id.* at ¶ 29, 37.

On August 30, 2010, SCASD filed a declaratory judgment action in this Court against Defendant/Third–Party Plaintiff Royal Bank, seeking a declaration that the Agreement, including both the 2006 Contract and the 2007 Amendment thereto, is void and unenforceable. In its declaratory judgment action, SCASD contends that the 2006 Contract is void *ab initio* as a result of SCASD's failure to issue the bonds subject thereto and that the 2007 Amendment is invalid as a result of the failure of both parties to file the Amendment with the appropriate authorities pursuant to LGU-DA. *See* Doc. 1.

On May 2, 2011, SCASD's first payment under the Agreement became due and SCASD failed to make said payment.

Doc. 22, ¶ 8. On May 3, 2011, Royal Bank provided notice to SCASD that a failure to remedy the breach within three days would constitute a default under the Agreement, triggering Royal Bank's option to terminate the Agreement. *Id.* at ¶¶ 9–10. On May 10, 2011, Royal Bank notified SCASD that it considered SCASD to be in default and breach, effectively electing to terminate the Agreement, and on May 12, 2011, Royal Bank informed SCASD that the Agreement's current termination fee, governed by agreed-upon benchmark interest rates, was $10,368,632.09. *Id.* at ¶ 10.

Defendant/Third–Party Plaintiff Royal Bank asserts that both Rhoads and Miller Kistler are liable to it for the negligent misrepresentations in their opinion letters should this Court declare the entire Agreement to be invalid. *See* Doc. 22, ¶¶ 13, 42, 46. Specifically, Royal Bank complains that if the Agreement is declared to be void, thus eliminating its right to the termination fee thereunder, Royal Bank will suffer a multi-million dollar loss and that said loss is attributable to the negligent misrepresentations of both Miller Kistler and Rhoads. *Id.*

## III. STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 231 (3d Cir.2008) (quoting *Pinker v. Roche Holdings, Ltd.,* 292 F.3d 361, 374 n. 7 (3d Cir.2002)). In resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider only the allegations in the complaint, as well as "documents that are attached or submitted with

the complaint, ... and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir.2006).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). To survive a motion to dismiss, a civil plaintiff must allege facts that "raise a right to relief above the speculative level...." *Victaulic Co. v. Tieman*, 499 F.3d 227, 235 (3d Cir.2007) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). Accordingly, to satisfy the plausibility standard, the complaint must indicate that defendant's liability is more than a "sheer possibility." *Iqbal*, 129 S.Ct. at 1949. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

Under the two-pronged approach articulated in *Twombly* and later expounded upon and formalized in *Iqbal*, a district court must first identify all factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557, 127 S.Ct. 1955. Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a Rule 12(b)(6) motion to dismiss. *Iqbal*, 129 S.Ct. at 1950. Next, the district court must identify "the 'nub' of the ... complaint—the well-pleaded, nonconclusory factual allegation[s]." *Id.* Taking these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief. *See id.*

However, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips*, 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 556–57, 127 S.Ct. 1955). Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

## IV. DISCUSSION

Third–Party Defendants Rhoads and Miller Kistler have both filed Motions to Dismiss the Third–Party Complaint pursuant to Rule 12(b)(6) and, alternatively, Motions to Strike the Third–Party Complaint pursuant to Rule 14(a). We first address both parties' contentions regarding improper joinder under Rule 14 and Rhoads' arguments as to ripeness. We will then separately address Rhoads' and Miller Kistler's respective Rule 12(b)(6) challenges with respect to the substance of Royal Bank's negligent misrepresentation claims.

### 1. Rhoads' and Miller Kistler's Rule 14 Arguments

Both Rhoads and Miller Kistler move the Court to dismiss Royal Bank's

Third–Party Complaint as violative of Rule 14(a)(4) relating to joinder of third parties. Both Rhoads and Miller Kistler contend that a declaratory judgment action such as this does not warrant joinder of a third-party defendant. The Third–Party Defendants contend that they must be dismissed because, even if the underlying action is decided against Royal Bank, Royal Bank will not, as a result of that decision, be "liable" to SCASD, thus prohibiting a claim against Rhoads or Miller Kistler through third-party practice. Royal Bank counters that if the underlying action is decided against it, it will have suffered a loss for which Rhoads and Miller Kistler are responsible, thus fitting comfortably into the third-party practice setting. We find that Third–Party Defendant Rhoads and Miller Kistler too narrowly view the purposes of Rule 14(a) and third-party practice, and thus deny both Rhoads' and Miller Kistler's Motions to Strike for misjoinder.

■ Rule 14(a)(4) governs third-party practice and provides that a defendant "may, as a third-party plaintiff, serve a . . . complaint on a nonparty who is or may be liable to it for all or part of the claim against it." *See* Fed.R.Civ.P. 14(a)(1). In general, whether a particular third-party defendant may be impleaded is a question which "rests with the sound discretion of the trial court." *Hartford Casualty Ins. Co. v. ACC Meat Co.*, 2011 WL 398087, *1, 2011 U.S. Dist. Lexis 9945, *3 (M.D.Pa. Feb. 2, 2011) (citing *Morris v. Lenihan*, 192 F.R.D. 484, 487 n. 3 (E.D.Pa. May 2, 2000); *Judd v. Gen. Motors Corp.*, 65 F.R.D. 612, 615 (M.D.Pa. Oct. 25, 1974)). While "the third-party claim must be based on the concept of secondary liability," whether that liability is labeled as "indemnity, subrogation, contribution, warranty, or some other theory is irrelevant." *See* 1 SINCLAIR ON FEDERAL PRACTICE,

§ 5:8.1 (citing, *inter alia, Jones v. Waterman S.S. Corp.*, 155 F.2d 992 (3d Cir. 1946); *Craigie v. Gen. Motors Corp.*, 740 F.Supp. 353 (E.D.Pa. June 8, 1990); *Mitchell v. Duquesne Brewing Co.*, 34 F.R.D. 145 (W.D.Pa. Dec. 13, 1963)).

In the usual Rule 14 case, a plaintiff brings a cause of action against a defendant for damages, and the defendant/third-party plaintiff then impleads a third party that he believes is either partially or wholly liable to him for the potential damage award. Typically, the third-party plaintiff charges that the third-party defendant must indemnify the third-party plaintiff should it be ordered to pay damages to the plaintiff. A more challenging question arises where the action does not fit comfortably into the classic indemnity model; that is, where the underlying complaint is not one for monetary damages, but instead seeks a declaratory judgment against the defendant.

The challenge, as the parties aptly demonstrate, is that the declaratory judgment action does not necessarily involve a claim in which the original defendant may be "liable," in the usual understanding of the word, to the plaintiff. In a declaratory judgment, action, the decision is simply whether or not certain rights or duties exist. Here, if Royal Bank is unsuccessful in the declaratory judgment action and the Agreement is adjudicated void, Royal Bank will not have to pay a damage award to SCASD. Instead, the result is quite the opposite: a declaration that the Agreement is void will result in SCASD avoiding payment of a substantial termination fee to which Royal Bank believed it was entitled, thus causing Royal Bank to suffer a multi-million dollar loss. The question thus becomes whether this potential loss to Royal Bank is one properly suited for a third-party action against Rhoads and Miller Kistler based on alleged negligent misrep-

resentations regarding the Agreement's validity.

Both Rhoads and Miller Kistler have pointed out that judges sitting on several district courts within this Circuit have issued inconsistent and conflicting decisions on the issue of whether or not permitting impleader in a declaratory judgment action is consistent with the language of Rule 14(a). Understandably, both parties to this action have aligned themselves with case law tending toward their favor, with Royal Bank relying on opinions holding that declaratory judgment defendants may avail themselves of third-party practice, *see Hartford Casualty Ins. Co. v. ACC Meat Co.,* 2011 WL 398087, *1, 2011 U.S. Dist. Lexis 9945, *3 (M.D.Pa. Feb. 2, 2011); *Britamco Underwriters, Inc. v. B & D Milmont Inn, Inc.,* 1996 WL 445355, *2, 1996 U.S. Dist. LEXIS 11382, *5–6 (E.D.Pa. Aug. 6, 1996); *Monarch Life Ins. Co. v. Donahue,* 702 F.Supp. 1195 (E.D.Pa. Jan. 13, 1989), and Rhoads resting its case on decisions finding that Rule 14(a) does not give license to third-party practice in declaratory judgment actions, *see St. Paul Surplus Lines Ins. Co. v. Rhoads,* 1988 WL 127655, 1988 U.S. Dist. LEXIS 13484 (E.D.Pa. Nov. 28, 1988) *and U.S. Fire Ins. Co. v. Reading Mun. Airport Authority,* 130 F.R.D. 38 (E.D.Pa. Mar. 16, 1990). Despite Rhoads' contention that third-party practice between insurers, insurance agents, and insureds, at issue in these cases, is distinguishable from the case *sub judice,* we find these cases to be analogous and, thus, an analysis thereof is instructive in deciding the instant motions.

In *St. Paul Surplus Lines* and *U.S. Fire Ins. Co.,* plaintiff insurers brought declaratory judgment actions seeking a declaration of no coverage against the defendant insureds; the defendant insured then sought to implead the agent who had misrepresented the coverage under the policy.

*See U.S. Fire Ins. Co.,* 130 F.R.D. at 38; *St. Paul Surplus Lines,* 1988 WL 127655 at *1, 1988 U.S. Dist. LEXIS at *1. The courts looked only to the express language of the statute, without contemplating the broad purposes behind third-party practice, and after cursory analysis, dismissed the third-party defendants. *See U.S. Fire Ins. Co.,* 130 F.R.D. at 39; *St. Paul Surplus Lines,* 1988 WL 127655 at *1, 1988 U.S. Dist. LEXIS at *2. In both opinions, the courts held that a straightforward reading of the rule prohibits third-party practice in declaratory judgment actions because without a claim for money damages, the impleaded party, to quote *St. Paul Surplus Lines,* "cannot be liable to the original defendants for any part of that claim." *St. Paul Surplus Lines,* 1988 WL 127655 at *1, 1988 U.S. Dist. LEXIS at *2.

Both the *St. Paul Surplus Lines* court and the *U.S. Fire Insurance* court believed that, because there could be no monetary judgment against the original defendant in a declaratory judgment action, that is, the defendant could not be directed to pay anything to the plaintiff, there was no harm for which a third-party defendant could be liable to the original defendant. The courts neglected to consider, however, that the declaratory judgment could still cause a harm or loss to the original defendant for which the impleaded defendant may be liable. This is far too narrow a view of the terms "claim" and "liable," a view that we believe is both inconsistent with the well-established understanding of Rule 14(a)'s broad purposes and the majority of the court decisions throughout the United States and this Circuit. *Monarch, Britamco,* and *Hartford* are recent cases from within this Circuit that are illustrative of and consistent with this modern trend.

In *Monarch,* a life insurance company filed a declaratory judgment action against

named beneficiaries of a policy, seeking a declaration that the policy was void *ab initio* due to material misrepresentations in the application. *Monarch*, 702 F.Supp. at 1196–97. The beneficiaries filed a third-party complaint against an investment firm which had assisted them with the application, alleging that if the policy was void, the investment firm was liable to them for any loss sustained, that is, for the amount of benefits that would have been paid had the policy been valid. *Id.* The court explained that "[Rule 14] requires neither an identity of claims nor even that the claims rest on the same legal theory," and held that allowing the investment firm to be impleaded was consistent with the purposes of the rule. *Id.* at 1197–98.

Similarly, in *Britamco*, the court answered the question of whether a declaratory judgment defendant may implead a third-party defendant in the affirmative. There, the plaintiff insurer filed a declaratory judgment action to determine its duties under an insurance policy issued to the defendant inn. *Britamco*, 1996 WL 445355, at *1–2, 1996 U.S. Dist. LEXIS 11382, at *2–4. The underlying declaratory judgment action turned on the court's construction of the policy with respect to coverage for an assault incident occurring at the inn. *Id.* The defendant inn then sought to implead the insurance agent who had assured the defendant that the policy covered such incidents. *Id.* In allowing the third-party complaint, the court held that "[c]ourts should liberally construe Rule 14 in light of its intended purpose of 'accomplishing in one proceeding the adjudication of the rights of all persons concerned in the controversy and to prevent the necessity of trying several related claims in different lawsuits.'" *Id.* at *2, 1996 U.S. Dist. LEXIS 11382 at *5. The court further stated that where the third-party defendant may be liable to the original defendant "for *any damages* that they

might incur" if the court finds for the plaintiff in the declaratory judgment action, impleader is permitted. *Id.* at *2, 1996 U.S. Dist. LEXIS 11382 at *5–6 (emphasis added).

Most recently, in *Hartford,* the court followed the *Britamco* and *Monarch* decisions in permitting a declaratory judgment defendant, in a suit brought by its insurer, to implead an insurance agent whose negligence may have resulted in the underlying contract being invalid. *Hartford,* 2011 WL 398087, *1–3, 2011 U.S. Dist. LEXIS 9945, *4–6. In doing so, the *Hartford* court relied on the holdings of *Britamco* and *Monarch* and further cited to decisions from several courts throughout the United States holding the same. *Id.* at *2–3, 2011 U.S. Dist. Lexis 9945 at *5–6 (citing *United of Omaha Life Ins. Co. v. Reed,* 649 F.Supp. 837, 841 (D.Kan. May 23, 1986); *Old Republic Ins. Co. v. Concast, Inc.,* 99 F.R.D. 566, 568 (S.D.N.Y. Sept. 20, 1983)).

Our independent review of the case law further reveals that the modern trend appears to support liberal construction of Rule 14(a) and permit third-party actions to be filed in declaratory judgment cases where an adverse ruling on the underlying action may cause the original defendant to suffer a loss for which the third-party defendant may be liable. *See, e.g., E. Enters. v. Shalala,* 942 F.Supp. 684, 689 (D.Mass. Mar. 30, 1996) ("There is no express requirement that the main claim be for damages.") (reversed and remanded on other grounds); *see also Prudential Ins. Co. v. BMC Indus., Inc.,* 113 F.R.D. 100, 102–03 (S.D.N.Y. Nov. 12, 1986) (rescission action); *Pavey v. Univ. of Alaska,* 490 F.Supp. 1011, 1014–15 (D.Alaska June 9, 1980) (declaratory judgment).

Moreover, Moore's Federal Practice provides further guidance as to the essential elements of a third-party claim, speci-

fying exactly what constitutes a "claim" for purposes of third-party practice: "The liability of the third-party defendant to the party that impleaded it must be for *losses sustained by that party as a result of plaintiff's claim.*" 3 Moore's Federal Practice § 14.04 (emphasis added). The treatise goes on to state:

> Thus, for example, the fact that a third-party complaint may be based on a different legal theory from the underlying case does not bar impleader. Similarly, the nature of the relief sought by plaintiff in the underlying action may not rob defendant of its ability to implead.

*See id.* (providing an example of an insurer-insured declaratory judgment action permitting impleader of the insurance agent).

We find that the facts as pled by Royal Bank are analogous to those contemplated in the above-discussed case law. While Rhoads and Miller Kistler contend that they are entirely distinguishable, we find quite the opposite; indeed, the underlying theme is, in essence, identical. In *Hartford, Britamco,* and *Monarch,* each plaintiff sought a declaration that the contract did not require a payment to the defendant, either because certain requirements were not met or because the contract was void in its entirety. Further, in each of these cases, the party that the original defendant sought to implead had advised the defendant during the contracting process. In the event that the court declared that payment was not due to the defendant under the void or unenforceable contract, the defendants in each case impleaded a party who had made certain representations about the contract's validity or terms.

We struggle to ascertain any relevant distinction at all between the factual scenarios in the relevant case law and the facts as pled in the case *sub judice.* Here, SCASD has brought a declaratory judg-

ment action against Royal Bank, seeking a declaration that the Agreement is void in its entirety and that SCASD is not required to pay to Royal Bank the multimillion dollar termination fee provided for in the Agreement. Like the third-party plaintiffs in *Monarch, Britamco,* and *Hartford,* Royal Bank has filed a third-party complaint against the parties that advised it as to the validity and enforceability of the Agreement, charging that if the Agreement is declared void or unenforceable, Rhoads and Miller Kistler are liable for their respective negligent misrepresentations as to its validity.

Consistent with the decisions in *Monarch, Britamco,* and *Hartford,* as well as those of many district courts throughout the country and respected authorities on federal civil practice, we hold that where a declaratory judgment in a plaintiff's favor may result in a loss to the defendant, the broad purposes of Rule 14(a) permit the defendant to join a third-party defendant who may be liable to it, in whole or in part, for that loss. Accordingly, we deny both Rhoads' and Miller Kistler's Motions to Strike, as both parties have been properly joined pursuant to Rule 14(a).

### 2. Rhoads' Ripeness Argument

Rhoads argues that, even if Royal Bank has pleaded a valid claim for negligent misrepresentation, the claim is not yet ripe because whether or not Royal Bank will suffer damages is contingent upon this Court's decision in the underlying declaratory judgment action. To support its argument, Rhoads postulates that the claim that Royal Bank presently has is one for potential future damages if this Court were to find the underlying Agreement to be void and unenforceable. Thus, Rhoads argues that Royal Bank's Third–Party Complaint against it for negligent misrepresentation is necessarily premature be-

cause the underlying claim has "not yet been fully adjudicated and the negligent misrepresentation claims against Rhoads could be rendered moot," thus eliminating the potential for harm to Royal Bank. (Doc. 41, ¶ 22).

Royal Bank counters that first, the ripeness doctrine is inapplicable here where Royal Bank has already been injured and, second, that dismissing all third-party claims as moot where the underlying action has not yet been decided against the third-party plaintiff would obviate the entire concept of third-party practice. In its Third–Party Complaint, Royal Bank states that, as a direct result of SCASD's breach of the Agreement, Royal Bank has suffered damages in the amount of $10,368,632.09. Royal Bank contends that, if the Agreement is declared void, it will be permanently damaged in this amount, as it will have no contractual right to the fee, and that the negligent misrepresentations of Rhoads caused that damage by inducing Royal Bank to rely on the Agreement as valid and enforceable.

The above discussion of impleader clearly indicates that, often, the liability of the impleading party will not yet be firmly established at the time he files his third-party complaint. In the many cases where impleader was permitted in a declaratory judgment action, the third-party plaintiff may not have suffered any damage whatsoever had the underlying action been adjudged in its favor. As one authority on federal civil procedure put it: "The third-party claim may be contingent on resolution of the impleading party's liability." SINCLAIR, § 5:8.1.

As Royal Bank aptly notes, "[i]f claims against third-parties were premature until the underlying claim had been adjudicated, there would be no third-party claims and multiple, successive litigations would be the norm." See Doc. 50, p. 13. We strug-gle to identify a situation in which a third-party plaintiff will have already established an absolutely certain right to damages and the corresponding liability of the original defendant prior to adjudication of the underlying complaint. The third-party plaintiff will know, based on the relief requested by the plaintiff, what his potential damages may be; but he cannot ascertain, with certainty, whether the court will award those damages or not.

■ We find Royal Bank's arguments relating to the purpose of third-party practice compelling. The very nature of third-party practice subjects it to contingencies; that is, the third-party plaintiff's harm is contingent upon the outcome of the underlying action and, thus, the third-party defendant's potential liability is likewise contingent upon the third-party plaintiff underlying liability. We believe that the interests of efficient use of judicial resources, avoiding duplication of proceedings and effort, and diminishing the potential for inconsistent determinations, outweigh Rhoads' arguments to the contrary. Refusing to allow a third-party plaintiff to join a third-party defendant who may be liable to him would wholly obviate the purposes of third party practice, resulting in a multiple successor indemnity actions that fly in the face of judicial efficiency and the goals of Rule 14. This path we refuse to take. We believe that the interests of judicial economy and the established goals of third-party practice fully support this determination.

### 3. Negligent Misrepresentation Claims

Having addressed preliminary justiciability and joinder matters, we now turn to Rhoads' and Miller Kistler's respective Rule 12(b)(6) challenges to the merits of Royal Bank's negligent misrepresentation claims. This case is before the Court on

diversity of citizenship jurisdiction, and the sole claim asserted in Royal Bank's Third–Party Complaint against the Third–Party Defendants is one for negligent misrepresentation. Thus, we are guided by Pennsylvania substantive law in determining whether Royal Bank has pled facts sufficient to support a claim for negligent representation. *See Hamilton v. Roth*, 624 F.2d 1204, 1210 (3d Cir.1980) ("The principle of *Erie* is that federal courts adjudicating rights conferred by state law must do so through the application of substantive state law."); *see also Partners Coffee Co., LLC v. Oceana Servs. & Prods. Co.*, 700 F.Supp.2d 720 (W.D.Pa. Mar. 25, 2010) (applying Pennsylvania substantive law to negligent misrepresentation action in federal district court); *Williams Controls, Inc. v. Parente, Randolph, Orlando, Carey & Assocs.*, 39 F.Supp.2d 517, 529–30 (M.D.Pa. Mar. 15, 1999) (same).

■ Pennsylvania has adopted the Restatement (Second) of Torts § 552 governing negligent misrepresentation. *See Gibbs v. Ernst*, 538 Pa. 193, 647 A.2d 882, 890 (1994) (discussing and adopting § 552). That section provides that liability exists for negligent misrepresentation where: (1) the defendant, in the course of his business or in a transaction in which he has a pecuniary interest, supplied false information with respect to that transaction or business; (2) the plaintiff justifiably relied on the false information in making a decision; and (3) the defendant was negligent in failing to exercise the reasonable care necessary in providing the information, that is, he either knew or should have known the truth or falsity of his representation. *See Williams Controls, Inc.*, 39 F.Supp.2d at 529–30 (discussing application of § 552 in Pennsylvania). Pennsylvania courts have determined that a lack of privity is not necessarily fatal to a party's negligent misrepresentation claim where it

is shown that the defendant knew or should have known that a non-client may rely on his representations. *See Bilt–Rite Contractors v. Architectural Studio*, 581 Pa. 454, 866 A.2d 270, 285 (2005) ("[T]here is no requirement of privity in order to recover under § 552.").

■ Negligent misrepresentation can be distinguished from intentional misrepresentation in that, to find liability for the former, the defendant need not necessarily have known that his words, when spoken, were untrue; it is sufficient to find liability that the defendant "failed to make reasonable investigation of the truth of those words." *Gibbs*, 647 A.2d at 890. Importantly, "[a] negligent misrepresentation claim requires an actual misrepresentation as opposed to assumptions on the part of the recipient." *Partners Coffee*, 700 F.Supp.2d at 734 (citing *Bortz v. Noon*, 556 Pa. 489, 729 A.2d 555, 561 (1999)). Finally, and perhaps most pertinent in this action, one of the critical considerations in this cause of action is justifiable and reasonable reliance. To that end, the Pennsylvania courts have explained that "[o]ne who has special knowledge, experience, and competence" might not be reasonable in relying on the statements of another "for which the ordinary man might recover," *Am. Metal Fabricators Co. v. Goldman*, 227 Pa.Super. 284, 323 A.2d 891, 894 (1974), and thus those parties face a more stringent burden of proving that their reliance was justified.

### a. Rhoads' Motion

Rhoads raises several Rule 12(b)(6) arguments in its Motion addressing both the 2006 Contract and the 2007 Amendment. With respect to the 2006 Contract, Rhoads contends that the Rhoads' Letter states legal opinion, not material facts, and as such cannot be the subject of a negligent misrepresentation claim. Second, Rhoads

argues that the Rhoads' Letter contains a judicial discretion clause and express language disclaiming any duty to supplement or amend the letter, thus precluding a negligent misrepresentation claim. Finally, and relatedly, Rhoads argues that its liability, if any, is limited to the 2006 Contract as a result of the operation of its disclaimer language, thus foreclosing any potential "negligent omission" liability. We will address each of these arguments in turn.

### i. Statement of Legal Opinion versus Statement of Fact

Rhoads' first argument with respect to the viability of the negligent misrepresentation claim is that the Rhoads' Letter constitutes "legal opinion," not a representation of facts, and thus Royal Bank's claims cannot be squared with the negligent misrepresentation requirement of a "material fact." Doc. 41, ¶¶ 26–27. Rhoads' argument on this point is, in essence, that absent any representations of material fact made to Royal Bank, it cannot be liable to Royal Bank for negligent misrepresentation.

We note preliminarily that Royal Bank did not attach the Rhoads' Letter to its Third–Party Complaint; however, Rhoads did attach the letter to its Rule 12(b)(6) Motion for our consideration, and as the Rhoads' Letter is quoted in Royal Bank's Third–Party Complaint and is a document "integral to the claim," *see Buck*, 452 F.3d at 260, we must consider its language in determining whether Royal Bank has pled a claim for which relief can be granted. *See Pension Benefit Guaranty Corp. v. White Consolidated Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

Pennsylvania courts do not appear to have spoken on the precise point raised by Rhoads. Rhoads directs us to Pennsylvania cases which list misrepresentation of a "material fact" as an element of the cause of action; however, other authority in Pennsylvania states that the tort requires false "information," as required by the Restatement. Indeed, the state courts' language is inconsistent in referencing "fact" versus "information" in its decisions, and we are thus unable to extract any concrete guidance therefrom. Neither party has presented this Court any Pennsylvania precedent directly speaking to this issue, and our independent review has revealed none.

■ Notwithstanding this dearth of authority, the Pennsylvania Supreme Court has expressly adopted the Restatement (Second) of Torts § 552, which governs negligent misrepresentation, and the comments to that section provide us with guidance, specifically comment b, which states: "The rule stated in this Section applies *not only* to information given as to the existence of facts *but also to an opinion given upon facts* equally well known to both the supplier and the recipient. Such an opinion is often given by one whose knowledge of the facts is derived from the person who asks it." Restatement (Second) of Torts, § 552, cmt. b (emphasis added). Further, supporting the comments to § 552, this section does not list "material fact" as one of the enumerated elements; indeed, the section refers to "information." This suggestion appears to make logical sense, given that those against whom negligent misrepresentation claims are often brought opine not only on the state of facts but also as to the meaning and implications of those facts.

Again, we note that the parties' briefs indicate a lack of Pennsylvania court decisions on this question, and this Court's

independent review of Pennsylvania case law has revealed the same. As such, we will consider Pennsylvania's failure to explicitly reject comment b, a comment that is patently inconsistent with Rhoads' arguments, as its intention not to do so, and we decline to carve out such a substantial limitation for the Pennsylvania courts without any indication of their inclination to do so. Accordingly, because the decisional law in Pennsylvania does not appear to have limited that state's adoption of § 552 to exclude the guidance of the comments, we see no reason to believe that the state's courts would disagree with our holding.

Rhoads further relies on *Eisenberg v. Gagnon*, 766 F.2d 770 (3d Cir.1985), in its argument that legal opinions or projections cannot support a claim for negligent misrepresentation. A thorough reading of *Eisenberg*, however, does not support this proposition. While Rhoads is correct that the Third Circuit in *Eisenberg* did not directly address the question of whether an opinion may serve as the basis of a negligent misrepresentation claim, the Circuit *did* address opinions and projections in the context of fraudulent misrepresentation claims, and its analysis is quite instructive to the instant matter.

In *Eisenberg*, the Third Circuit was confronted with an appeal from a jury verdict in the district court finding the defendants not liable for negligent misrepresentation, fraudulent misrepresentation, and several securities claims. *Id.* at 773–74. In the jury instructions on the securities misrepresentation charges, heavy emphasis was placed on the phrase "existing facts" but no mention was made of whether projections or opinions could form the basis for liability. *See id.* at 775. The securities ruling was appealed; the negligent misrepresentation judgment was not.

On appeal, the defendant accounting firm argued that "the unappealed jury verdict in its favor [on the negligence claims] precludes a new trial against it on the securities claim." *Id.* at 776. Importantly, the Circuit noted, in the context of the securities claim, that failure to instruct the jury as to "projections or opinions ... would have been a serious error of law." *Id.* at 775–76. The Circuit went on to state, in a footnote, that "[b]ecause both the negligent misrepresentation claim and the securities claim against [the defendant] are based on its endorsement of the allegedly fraudulent financial projections, the jury verdict for [the defendant] on the negligence claims may also have been tainted by the court's failure to instruct as to predictions and opinions." *Id.* at 776 n. 2. The court thus appeared to imply that the "fact only" instruction may have likely influenced the jury's verdict on the negligent misrepresentation claim, but because the verdict was not appealed, the court did not directly decide that particular issue.

Rhoads points to one statement in the *Eisenberg* opinion which it considers dispositive to the instant motions, namely the court's statement that there was sufficient evidence for a jury "to conclude [that the defendant attorney, also an investor] negligently misrepresented the facts underlying the limited partnership." Doc. 47, pp. 16 (quoting *Eisenberg*, 766 F.2d at 780). Rhoads emphasizes the court's use of the word "fact." However, we decline to accept Rhoads' argument that this language was deliberate absent other indicia of the court's intent. Standing alone, this language does not necessarily support the conclusion that the court intended to limit the tort of negligent misrepresentation to actions based upon factual representations alone. *See id.* at 779. The question of whether an opinion can form the basis of a negligent misrepresentation claim was neither raised nor addressed by the court,

and we decline to make such a grand inference absent further indication.

Rhoads also relies on *City Nat'l Bank of Detroit v. Rodgers & Morgenstein,* 155 Mich.App. 318, 399 N.W.2d 505 (1987), which cited to *Eisenberg* in reaching the holding that Rhoads advocates for in the instant case. Again, after a thorough reading of *Eisenberg,* we believe that the *City Nat'l Bank* court, like Rhoads, mischaracterizes the language of *Eisenberg.* As stated above, the *Eisenberg* court, in reversing the district court's judgment notwithstanding the verdict, primarily considered whether the jury's decision was founded on sufficient evidence of justifiable reliance. The Circuit's decision with respect to the negligent misrepresentation claim did not address whether a statement of opinion can form the basis of a negligent misrepresentation claim, and we decline to read the decision in such a manner. We thus find Rhoads' arguments to be unavailing and expressly decline to read out of *Eisenberg* a holding which the court did not intend.

Finally, including opinions as "information" that can form the basis of a negligent misrepresentation claim makes logical sense. When individuals solicit information from professionals or other individuals in the business of providing such opinions, they infrequently request facts; most often, the requestor provides the factual information and requests an opinion on the ultimate implications or effects of those facts. *See, e.g., Central Bank Denver, N.A. v. Mehaffy, Rider, Windholz & Wilson,* 865 P.2d 862, 865 (Colo.Ct.App.1993) ("Written legal opinions constitute an integral component of a wide variety of corporate, commercial, and financing transactions. These types of opinions are often required as a condition precedent to closing a transaction...."). Attempting to draw a distinction between "fact" and "opinion" would likely result in countless battles over semantics and attorneys engaging in linguistic posturing in their opinion letters in order to avoid liability. And further, Rhoads' concerns about opening the floodgate for liability for those who provide such opinions can be quieted by the fact that § 552 has several substantive safeguards in place: not only the requirement of proof that a standard of care was breached, but also that the recipient's reliance was justified.

Accordingly, we deny Rhoads' Motion to Dismiss Royal Bank's negligent misrepresentation claim on the ground that statements of opinion cannot form the basis of such a claim.[2]

### ii. Judicial Discretion and Duty to Supplement Disclaimer

Rhoads next argues that they have disclaimed all potential liability for negligent misrepresentation by including in the Rhoads' Letter a judicial discretion clause and a clause limiting scope of the letter to the facts, circumstances, and law applicable at the time it was authored and disclaiming any duty to supplement or amend it should the facts or law change.

**2.** We further note that, even if we were to find that a statement that the agreement is "binding" or "valid" is a statement of opinion and such opinions are not susceptible to a negligent misrepresentation claim, we would still permit Royal Bank to move forward with its third-party action. As Royal Bank adequately points out in its brief, in order to make the legal conclusions that Rhoads did in its letter, it necessarily had to review certain facts; indeed, the Rhoads Letter states that documentation, certificates, and relevant laws were reviewed in order to come to their ultimate conclusions. Thus, the Rhoads' Letter, if not explicitly, at least *implicitly* states certain facts, for example, that SCASD has taken all steps necessary to effectuate the Agreement and in order to make the Agreement binding.

The judicial discretion clause, in pertinent part, provides:

> The enforceability of the [Agreement] and the rights and remedies thereunder, are subject to, and may be limited by ... (ii) general principles of equity ...; (iii) the availability of equitable remedies; (iv) the discretion of a court or other authority or body to grant, impose, or render remedies under specific circumstances; ... and (vii) the discretion of a court or other authority or body to invalidate or decline to enforce any right, remedy, or provision of the Swap Agreement or the Swap Resolution (including without limitation the termination provisions of the Swap Agreement) determined by it to be a penalty.

Doc. 41–1, p. 4. The future duty disclaimer provides:

> The opinion is given as of the date hereof and is limited to the facts, circumstances, and matters set forth herein and to laws currently in effect. No opinion may be inferred or implied beyond matters expressly set forth herein, and we do not undertake, and assume no obligation, to update or supplement this opinion to reflect any facts or circumstances that may come to our attention after the date hereof or any changes in law or fact after the date hereof.

*Id.*

In attempting to establish the immunizing effect of these clauses, Rhoads relies on a 1995 case decided by the District Court for Vermont, *Wash. Elec. Cooperative v. Mass. Mun. Wholesale Elec. Co.*, 894 F.Supp. 777 (D.Vt. Aug. 3, 1995), which involved a similar judicial discretion clause, for its holding in the defendant's favor. However, Rhoads neglects the important point that in *Washington Electric*, the court was faced with the question of the clause's impact at the summary judgment level, when a factual record had been fully developed and a reasoned determination could be appropriately made. Importantly, the court found that the language of the judicial discretion clause, *coupled with a substantive change in the law between the time the letter was authored and the time of trial*, warranted a dismissal of the negligent misrepresentation claim. *Id.* at 789–91. Given its procedural posture, this is simply not true in the case sub judice.

■ Again, we find Pennsylvania substantive law to be lacking any specific direction on this point. Given that Pennsylvania courts have not spoken on this subject, we opt to consider the impact of the judicial discretion clause and future duty disclaimer as part of the overall reasonableness inquiry, without carving out a bright line rule that such a clause alleviates all negligent misrepresentation liability. The effect of this language is most appropriately considered in determining whether Royal Bank's reliance on the letter, and on an alleged failure to update the letter, was reasonable under the circumstances. As above, one of the most critical elements of this tort is that of justifiable reliance. Ergo, a particular defendant might be able to avoid liability if it can show that the plaintiff was unreasonable in relying on its representations given that they were littered with disclaimers and waivers of duties.[3]

Further, and critically on this point, we remain cognizant that this action is only at the motion to dismiss stage, and an opportunity to fully develop the record is war-

---

**3.** We note that the Third Circuit has found similarly in the securities context, allowing the case to be presented to a trier of fact on the issue of justifiable reliance where an opinion letter contained a judicial discretion disclaimer. *See Kline v. First W. Gov't Sec.*, 24 F.3d 480, 499 (3d Cir.1994).

ranted where questions will turn on dispositive issues of fact. The factual inquiry will thus become whether or not it was reasonable for Royal Bank to rely on the Rhoads' Letter given that the letter contained arguably extensive disclaimers. This question we decline to address at the motion to dismiss stage as the record has not yet been fully developed sufficiently to invite this determination. For our purposes on the instant Motion, Royal Bank has adequately pled that it justifiably relied on the Rhoads' Letters in making its decision to serve as the counterparty to the Agreement, and the presence or absence of a disclaimer clause alone does not warrant dismissal of the negligent misrepresentation claim at this stage.

### iii. Negligent Omission

 Rhoads' arguments with regard to whether an alleged omission can form the basis of a negligent misrepresentation claim is closely tied to the question of justifiable reliance and the impact of the disclaimer and judicial discretion clause. Generally, an affirmative representation is required in order for liability to attach on a negligent misrepresentation claim. *Partners Coffee*, 700 F.Supp.2d at 735 (citing *Bortz*, 729 A.2d at 561). However, in some circumstances, courts have carved out what appears to be a "negligent omission" subset to this rule; that is, liability may be found where a party opts to make a representation which, at the time, was truthful or reasonably believed to be truthful, and that party subsequently learns that the statement was false or inaccurate but fails to amend his prior representation accordingly. *See Kline v. First W. Gov't Secs., Inc.*, 24 F.3d 480, 491 (3d Cir.1994). However, and importantly, "[a]n omission is actionable only where there is an independent duty to disclose the omitted information." *Weisblatt v. Minn. Mut. Life*

*Ins. Co.*, 4 F.Supp.2d 371, 380 (E.D.Pa. Apr. 1, 1998) (quoting *Estate of Evasew*, 526 Pa. 98, 584 A.2d 910, 913 (1990)) (emphasis added). In sum, liability for a material omission will only arise where the defendant has previously spoken on an issue, and upon learning that he was incorrect, he fails to correct his statement. *Kline*, 24 F.3d at 491.

We stated above that Royal Bank has pled sufficient facts in its Third–Party Complaint, coupled with the plain language of the Rhoads' Letter, to assert a claim for negligent misrepresentation. If, in the underlying action, this Court finds that the Agreement is void *ab initio* and that certain prerequisite steps to effectuate its validity were not taken, Rhoads' statements in its letter that all steps necessary to effectuate the Agreement were taken will be rendered false. Royal Bank has pled that Rhoads was involved in both SCASD's decision not to issue the bonds subject to the Agreement and also with the execution of, and failure to properly file, the 2007 Amendment, the inactions which, SCASD alleges, voided the Agreement. As such, under the law as summarized above, Rhoads may have had a duty to amend its prior incorrect statements if it knew or should have known that the letter was rendered inaccurate.

Whether Royal Bank's reliance on Rhoads' duty to amend the letter was reasonable, given that Rhoads stated in the Rhoads' Letter that it retained no duty to supplement or amend the letter, is a question of fact which will become more fully developed with discovery. As it stands, Royal Bank has sufficiently pled facts to support the requisite elements of a negligent misrepresentation claim. Accordingly, we deny Rhoads' Rule 12(b)(6) Motion to Dismiss in its entirety.[4]

4. Briefly, we note that Rhoads has also ar- gued that Royal Bank has failed to plead a

### 4. Third–Party Defendant Miller Kistler's 12(b)(6) Motion

Miller Kistler lodges several related challenges at Royal Bank's Third–Party Complaint and firmly maintains that it cannot be held liable to Royal Bank on a negligent misrepresentation claim. First, Miller Kistler points out that its opinion letter related only to SCASD's *authority to enter into* the Agreement and did not in any way opine as to the enforceability or interpretation of any of the Agreement's terms; Miller Kistler submits that the Miller Letter lacks any mention of the impact of the issuance, or nonissuance, of bonds, or the filing requirements of LGUDA, the two primary justifications for SCASD's contention that the Agreement is void. Indeed, Miller Kistler charges, the Miller Letter contains no reference to the Agreement's terms, or their validity, whatsoever.

Second, with respect to Royal Bank's "negligent omission" theory, Miller Kistler contends that the duty to speak only arises where one has previously spoken on a particular issue and changes have occurred which invoke an affirmative duty to correct previous statements. Miller Kistler charges that nothing alleged in the declaratory judgment action or in the Third–Party Complaint demonstrates a change in circumstances such that Miller Kistler's initial letter was rendered incorrect or inaccurate invoking the duty to correct/speak.[5] Finally, Miller Kistler argues that Royal Bank has failed to plead a breach of any applicable standard of care. Miller Kistler reminds the Court that this is not a strict liability offense but a negligence offense, thus requiring the plaintiff to plead with specificity facts demonstrating that the defendant has breached an applicable standard of care. Miller Kistler alleges that Royal Bank, in its complaint, merely states that Miller Kistler has made a false statement, but does not allege a breach of duty or facts supporting a breach.[6]

As above, we are guided by Pennsylvania substantive law in this diversity action. The elements of a negligent represen-

---

breach of any applicable standard of care. As indicated in the above discussion, Royal Bank has pleaded in its Third–Party Complaint that by issuing an opinion letter relating to the transaction, and by participating as expert bond counsel to SCASD throughout the amendment process, Rhoads had a duty to provide truthful and accurate information to all parties who it knew, or should have known, would rely on the letter. The Third–Party Complaint goes on to state that, if the Agreement is ultimately rendered void by either SCASD's failure to issue the bonds subject to the Agreement or by both parties' failure to file the 2007 Amendment with the proper authorities, and if discovery demonstrates, as Royal Bank alleges, that Rhoads knew or should have known about the flaws in the Agreement, Rhoads should be held liable to it for negligently misrepresenting that the Agreement was, in fact, valid. In sum, we believe that Royal Bank has pled sufficient facts which, if true, support a finding that Rhoads was negligent in its actions with respect to Royal Bank.

**5.** We note that the Miller Letter contained a future duty disclaimer similar to that in the Rhoads' Letter. If we were to find that the Miller Letter contained a false or incorrect representation, the question of reasonable reliance, given the disclaimer, would become one of fact requiring the opportunity for discovery. However, as we find that no statement in the Miller Letter will be rendered false should the Agreement be declared void, we need not consider the impact of the disclaimer.

**6.** We need not address this argument in detail as we find that Royal Bank has failed to meet the first element of the negligent misrepresentation claim, that is, that a false statement was made or that an earlier statement was subsequently rendered false. However, had we found that Miller Kistler had made a false statement, our negligence analysis would mirror that contained in note 4, *supra*, responding to Rhoads' argument on the same point.

tation claim bear repeating: (1) the defendant, in the course of his business or in a transaction in which he has a pecuniary interest, supplied false information with respect to that transaction or business; (2) the plaintiff justifiably relied on the false information in making a decision; and (3) the defendant was negligent in failing to exercise the reasonable care necessary in providing the information, that is, he either knew or should have known the truth or falsity of his representation. *See Williams Controls, Inc.*, 39 F.Supp.2d at 529–30 (discussing application of § 552 in Pennsylvania).

■ We find that Third–Party Plaintiff Royal Bank has failed to adequately plead sufficient facts to overcome Miller Kistler's Rule 12(b)(6) Motion to Dismiss. While we acknowledge that *Iqbal* provides somewhat greater flexibility to plaintiffs in their pleading requirements, we foresee no set of circumstances based on Royal Bank's Third–Party Complaint under which Third–Party Defendant Miller Kistler could plausibly be found liable for negligent misrepresentation. It bears repeating that while a complaint attacked by a Rule 12(b)(6) motion to dismiss need not contain *detailed* factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). To survive a motion to dismiss, a civil plaintiff must allege facts that "raise a right to relief above the speculative level...." *Victaulic Co. v. Tieman*, 499 F.3d 227, 235 (3d Cir.2007) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). We find, based on the plain language of the Miller Letter, that Royal Bank has failed to state a claim for negligent misrepresentation.

As to the first and most dispositive element, that a misrepresentation was made,

we must note preliminarily that Royal Bank maintains that the Agreement is valid and enforceable and that the Agreement was not rendered void by either SCASD's failure to issue the bonds subject to the Agreement or the parties' failure to file the 2007 Amendment with the proper authorities. They charge, however, that if this Court ultimately finds that the Agreement and corresponding termination fee are unenforceable, Miller Kistler is liable to Royal Bank for supplying "material, false information regarding the validity of the 2006 Contract and the Amendment." (Doc. 22, ¶ 44.) Royal Bank contends that, if we find the Agreement to be void, we must find that Miller Kistler made a false statement when it issued the Miller Letter relating to the Agreement.

In its Third–Party Complaint, Royal Bank alleges the following facts: that Miller Kistler received a pecuniary gain for its role as SCASD's solicitor in the transaction; that the Miller Letter supplied material, false information regarding the validity of the Agreement; that Miller Kistler represented that the execution of the 2006 Contract was consistent with Pennsylvania law; and that the Miller Letter did not advise that any further steps were necessary to fully effectuate the 2006 Contract or the 2007 Amendment thereto. (Doc. 22, ¶ 44).

Royal Bank did not attach the Miller Letter to its Third–Party Complaint; however, Miller Kistler did attach the letter to its Rule 12(b)(6) Motion for our consideration, and as the Miller Letter is quoted in Royal Bank's Third–Party Complaint and is a document "integral to the claim," *see Buck*, 452 F.3d at 260, we must consider its language in determining whether Royal Bank has pled a claim for which relief can be granted. *See Pension Benefit Guaranty Corp. v. White Consolidated Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993)

("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

The contents of the Miller Letter are well-known by all parties and thus we shall provide only an abbreviated recitation of the terms herein. The Miller Letter provided that: (1) SCASD properly advertised the meeting at which the Swap Resolution was adopted; (2) the individuals executing the Agreement on behalf of SCASD were authorized to do so; (3) as of the date of the letter, the Swap Resolution, authorizing the issuance of bonds, had not been amended, altered, or revoked; (4) there existed neither pending nor threatened litigation to restrain the execution, delivery, or performance of the Agreement; and (5) the execution, delivery, and performance of SCASD's obligations under the Agreement do not violate "any law, statute, rule, or regulation to which [SCASD] is subject." (Doc. 40, Exhibit A, at pp. 2–3). Royal Bank asserts that it is the final statement which creates Miller Kistler's liability for negligent misrepresentation. However, Royal Bank has failed to demonstrate precisely in what way this statement will be rendered false should the Agreement be found unenforceable.

Royal Bank contends that, if Agreement is void for the reasons alleged in the underlying action, then Miller Kistler's representation that execution, delivery, and performance of the Agreement do not violate "any law, statute, rule, or regulation to which [SCASD] is subject" is necessarily a false statement. (Doc. 22, ¶ 44). However, Royal Bank has not indicated, and we are unable to discern, in what way a resolution of the underlying action in SCASD's favor would place the execution, delivery, or performance of the Agreement in contravention of the law.

In the underlying declaratory judgment action by SCASD seeking a determination that the Agreement is unenforceable, SCASD does not claim that it never had the authority to enter into the Agreement, that the Agreement was not properly executed. *See* Doc. 1. Neither does it claim that performance of the contract would contravene Pennsylvania law. *Id.* The declaratory judgment action speaks solely to whether the Agreement was rendered invalid by SCASD's failure to issue the bonds subject to the Agreement and both parties' failure, in 2007, to file the 2007 Amendment with the appropriate authorities. *Id.*

On its face, the Miller Letter speaks only to the authority of SCASD as a school district and municipal entity in Pennsylvania to enter into the Agreement, standing in stark contrast to the Rhoads' Letter, which quite explicitly stated that after a review of all relevant documents and applicable law, the Agreement is valid, binding, and enforceable. The Miller Letter had a different purpose than the Rhoads' Letter: it was issued to assure all parties to the Agreement that SCASD was authorized to enter into the Agreement and that the officials executing the Agreement on behalf of SCASD were authorized to do so. The letter represents only that SCASD had authority to enter into the Agreement, that there existed no pending or threatened litigation that would impact the Agreement, and that the Agreement and the execution and performance thereof were not in contravention of the law. These are the *only* opinions provided in the Miller Letter.

█ Negligent misrepresentation liability simply does not lie absent an actual misrepresentation; mere assumptions on the part of the recipient are insufficient to support this cause of action. *Partners Coffee*, 700 F.Supp.2d at 734 (citing *Bortz*,

729 A.2d at 561). After thorough review of the Third–Party Complaint and the Miller Letter, we find that Royal Bank has failed to direct this Court to any language in the Miller Letter which would be rendered false upon a finding that the Agreement is invalid. Thus, even assuming for purposes of this motion that the Agreement is ultimately found to be unenforceable, Royal Bank has failed to plead facts from which, if true, a trier of fact could find that the Miller Letter contained a false statement.

 In addition to its affirmative misrepresentation theory of liability, Royal Bank has also alleged that Miller Kistler is liable to it on a "material omission" theory. Royal Bank charges that Miller Kistler was negligent in failing to inform Royal Bank, first, that further steps were necessary (that is, the issuance of bonds by SCASD) for SCASD's responsibilities under the Agreement to become binding and enforceable and, second, that SCASD was required to take further action with the proper authorities, pursuant to LGUDA, before the 2007 Amendment would become effective. We find that these contentions, too, lack merit and thus cannot survive Miller Kistler's Rule 12(b)(6) Motion to Dismiss.

As detailed in Section IV(3)(a)(iii) above, negligent misrepresentation claims may, in limited circumstances, rest on an "omission" as opposed to "affirmative representation" theory. As we have stated, such a duty to inform, correct, or amend will only arise where a party has already spoken on a particular issue and that statement later becomes untrue or inaccurate. Royal Bank has failed to plead that any statement made in the Miller Letter was rendered false or inaccurate, or may be so rendered by a finding in SCASD's favor, thus invoking a duty on Miller Kistler's part to amend or supplement the letter.

Royal Bank alleges only that Miller Kistler omitted that SCASD's failure to issue the bonds subject to the Agreement might potentially render the Agreement void; they further allege that Miller Kistler omitted that failure to properly file any amendments may render them unenforceable. While we accept as true that Miller Kistler never provided this information to Royal Bank, we find that Royal Bank has not demonstrated sufficiently that Miller Kistler had any duty to do so.

In sum, we find that the Miller Letter provided very limited representations relating to SCASD's authority to enter into the Agreement. The Miller Letter made no mention of whether the parties had a duty to provide copies of the Agreement to anyone or whether its validity was contingent upon them doing so; it also did not speak to the effect of a failure to issue bonds on the Agreement. Indeed, the Miller Letter did not speak to the terms, implications, or validity of the Agreement whatsoever. Accordingly, we find that Miller Kistler did not have a duty to provide this information to Royal Bank and, as such, hold that Royal Bank's negligent misrepresentation claim against Miller Kistler cannot survive a Rule 12(b)(6) motion.

## V. CONCLUSION

To reiterate, and for all of the reasons stated herein, this Court finds that Third–Party Plaintiff Royal Bank has pled facts sufficient to support a claim for negligent misrepresentation against Third–Party Defendant Rhoads but has failed to adequately plead the same with respect to Third–Party Defendant Miller Kistler. Royal Bank has failed to point to any statement by Miller Kistler which may be rendered false, inaccurate, or misleading by any decision on the underlying declaratory judgment action. As such, Royal

Bank cannot maintain a claim for negligent misrepresentation claim against Miller Kistler. The action against Third–Party Defendant Rhoads will be permitted to go forward as Royal Bank has pled sufficient facts with respect thereto to support a negligent misrepresentation claim.

Finally, this Court concludes, consistent with the weight of authority in this Circuit and elsewhere, that the procedural posture created by a declaratory judgment action should not operate to prohibit third-party practice where such is otherwise warranted. In order to fully effectuate the purposes of Rule 14(a) and third-party practice, we hold that the mere positioning of Royal Bank as a defendant to a declaratory judgment action, instead of an action for damages, should not limit its ability to implead appropriate third-party defendants that are potentially liable to it for any loss it may suffer as a result of the underlying action.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Third–Party Defendant Rhoads' Motion to Dismiss or, in the Alternative, to Strike, (Doc. 41), is **DENIED** in its entirety.

2. Third–Party Defendant Miller Kistler's Motion to Dismiss or, in the Alternative, to Strike, (Doc. 40), is **GRANTED** for failure of Third–Party Plaintiff Royal Bank to state a claim for which relief can be granted against Third–Party Defendant Miller Kistler.

3. The Clerk **SHALL** terminate Third–Party Defendant Miller Kistler as a party to this action.