**[J-31-2020] [MO: Wecht, J.]**

# IN THE SUPREME COURT OF PENNSYLVANIA
## WESTERN DISTRICT

| | | |
|---|---|---|
| GARY L. GREGG AND MARY E. GREGG, | : | No. 29 WAP 2019 |
| | : | |
| Appellees | : | Appeal from the Order of the |
| | : | Superior Court entered September |
| | : | 12, 2018 at No. 1504 WDA 2017, |
| v. | : | affirming the Judgment of the Court |
| | : | of Common Pleas of Allegheny |
| | : | County entered September 27, 2017 |
| AMERIPRISE FINANCIAL, INC., | : | at No. GD 01-006611. |
| AMERIPRISE FINANCIAL SERVICES, | : | |
| INC., RIVERSOURCE LIFE INSURANCE | : | ARGUED: May 21, 2020 |
| COMPANY AND ROBERT A. KOVALCHIK, | : | |
| | : | |
| Appellants | : | |

## DISSENTING OPINION

**JUSTICE TODD**                              **DECIDED: FEBRUARY 17. 2021**

In *Commonwealth v. Golden Gate National Senior Care*, 194 A.3d 1010 (Pa. 2018), our Court held that Section 201-2(4)(xxi) of Pennsylvania's Unfair Trade Practices and Consumer Protection Law[1] ("CPL") prohibits all "deceptive conduct" in a consumer transaction, *i.e.*, all conduct which has "the capacity or tendency to deceive." I agree with the majority that this holding should be reaffirmed. Additionally, I agree that Section xxi can be invoked in either a public enforcement action brought by the Attorney General, or in a private action such as the one brought by Appellees in the case at bar. However, on the core question before us, I disagree that the General Assembly, when it amended Section xxi in 1996 to add the prohibition against "deceptive conduct" in the conduct of

---

[1] 73 P.S. § 201-2(4)(xxi) (hereinafter, "Section xxi").

consumer transactions for goods and services, intended to impose strict liability. Therefore, I must respectfully dissent.

As the majority recognizes, the question of whether Section xxi imposes strict liability is one of statutory interpretation, and thus our objective is to ascertain and effectuate the intent of the General Assembly. *Golden Gate*, 194 A.3d at 1023; *see also* 1 Pa.C.S. § 1921(a). As we have so oft observed, "[t]he best indication of legislative intent is the plain language of the statute." *Crown Castle NG East v. Pennsylvania Public Utility Commission*, 234 A.3d 665, 674 (Pa. 2020). When the words of a statute are free and clear of all ambiguity, they are the best indicator of legislative intent; hence, in such circumstances, "we cannot disregard the letter of the statute under the pretext of pursuing its spirit." *Fletcher v. Pennsylvania Property & Casualty Insurance Guarantee Association*, 985 A.2d 678, 684 (Pa. 2009) (citing 1 Pa.C.S. § 1921(b)). In my view, in concluding that Section xxi imposes strict liability, the majority contravenes these principles.

As discussed by the majority, when Section xxi was originally enacted in 1968, it prohibited only "fraudulent conduct" creating a likelihood of confusion or misunderstanding. 73 P.S. § 201-2(4)(xv) (effective 1968-1996). The current version of Section xxi at issue in this appeal was enacted by the legislature in 1996, when that body added the words "or deceptive" in the phrase "[e]ngaging in any other fraudulent *or deceptive* conduct which creates a likelihood of confusion or of misunderstanding." *Id.* § 201-2(4)(xxi) (emphasis added).

In *Golden Gate*, we addressed an enforcement action brought by the Attorney General to obtain an injunction under Section 201-4 of the CPL[2] to prohibit a nursing home from making what the Attorney General alleged were misleading statements in advertising materials regarding the nature and quality of care provided by the home to prospective residents. We interpreted the CPL as not requiring proof of intentional conduct on the part of the nursing home – a vendor of nursing care services – in order for it to be liable under Section xxi for creating a likelihood of confusion or misunderstanding on the part of the consumers of those services, the prospective residents. Noting our Court's long-standing recognition of the broad remedial purpose of the CPL in *Commonwealth by Creamer v. Monumental Properties, Inc.*, 329 A.2d 812, 817 (Pa. 1974), to halt "unfairness and deception in all consumer transactions," we stated in *Golden Gate* that, under Section xxi, "[a]n act or a practice is deceptive or unfair if it has the capacity or tendency to deceive, and neither the intention to deceive nor actual deception must be proved; rather, it need only be shown that the acts and practices are capable of being interpreted in a misleading way." *Golden Gate*, 194 A.3d at 1023 (quotation marks and citation omitted).

---

[2] Section 201-4 provides:

> Whenever the Attorney General or a District Attorney has reason to believe that any person is using or is about to use any method, act or practice declared by section 3 of this act to be unlawful, and that proceedings would be in the public interest, he may bring an action in the name of the Commonwealth against such person to restrain by temporary or permanent injunction the use of such method, act or practice.

73 P.S. § 201-4 (footnote omitted).

Consequently, the majority appropriately rejects Appellants' argument that the phrase "deceptive conduct" in Section xxi should be construed in a manner consistent with Section xxi's pre-amendment form, so as to require a showing of intentional fraudulent conduct by the vendor.[3] Such a construction would render inoperative the 1996 amendment which added the terms "or deceptive" to the type of conduct which is prohibited by Section xxi. Had the General Assembly wished to prohibit only intentional conduct constituting "fraud," this added language would not have been necessary, inasmuch as the version in effect prior to the 1996 amendment already contained such a prohibition.

Critically, however, unlike the majority, I do not view our *Golden Gate* decision as dispositive of the strict liability inquiry presented by this appeal, as we did not address in *Golden Gate* what state of mind, if any, must be shown under Section xxi to impose liability on a vendor such as Ameriprise for deceptive conduct, as that question was not before us in that case. In examining the text of Section xxi, and in tension with the majority's conclusion that Section xxi imposes strict liability, it is noteworthy that Section xxi differs markedly from other regulatory statutes which protect the public by imposing strict liability with language that expressly and unmistakably declares that such conduct is absolutely or strictly prohibited. *See*, *e.g.*, 35 P.S. § 6018.606(i) ("with respect to the offenses specified . . . the legislative purpose is to impose absolute liability for such

---

[3] Fraudulent conduct as reflected in the tort of intentional misrepresentation is comprised of the following elements: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994).

offenses"); 52 P.S. § 1396.4b(f)(2) ("It shall be presumed, as a matter of law, that a surface mine operator or owner is responsible without proof of fault, negligence or causation . . . "); 30 Pa.C.S. § 2504 ("No person, regardless of intent, shall: (1) Put or place in any waters . . . any electricity, explosives or any poisonous substances . . . (2) Allow any substance, deleterious, destructive or poisonous to fish, to be turned into or allowed to run . . . into any waters . . . ."); 4 Pa.C.S. § 1518.1 ("A person required under this section [of the Gaming Act] to file a report of a suspicious transaction who fails to [do so] shall be strictly liable for his actions . . . ."). Notably absent from Section xxi is any similar language indicating a legislative intent to impose strict liability on a vendor of goods and services for violating its prohibition against engaging in deceptive conduct.

Indeed, in my view, it would be incongruous for the General Assembly to prohibit a vendor from engaging in fraudulent conduct in Section xxi, which indisputably requires an intentional state of mind on the part of the vendor to deceive, *see, e.g.*, *Rohm and Haas Company v. Continental Casualty Company*, 781 A.2d 1172, 1179 (Pa. 2001) (fraud requires a "deliberate intent to deceive"), while simultaneously strictly prohibiting a vendor from engaging in deceptive acts without regard to *mens rea*, as doing so would reduce the fraud prohibition to mere surplusage. This would contravene the well established principle of statutory interpretation that in drafting a statute "the legislature is presumed to have intended to avoid mere surplusage, [and] every word, sentence, and provision of a statute must be given effect." *Independent Oil & Gas Association of Pennsylvania v. Board of Assessment Appeals of Fayette County*, 814 A.2d 180, 183 (Pa. 2002); *see also* 1 Pa.C.S. § 1922(2) ("the General Assembly intends the entire statute to be effective and certain"). The majority's construction of Section xxi – imposing strict liability for deceptive

conduct – obviates the need for a consumer to ever allege fraudulent conduct in order to prevail under this section. By this interpretation, the legislature's addition of the language "deceptive conduct" effectively swallows Section xxi's companion prohibition against fraudulent conduct which immediately precedes it, rendering that companion provision meaningless. Thus, the majority's construction fails to give effect to the full language of the statute, and such a reading should be avoided. *Allegheny County Sportsmen's League v. Rendell*, 860 A.2d 10, 19 (Pa. 2004).

The Superior Court below seems to have derived its conclusion that Section xxi is a strict liability statute from its reading of the Commonwealth Court's decision in *Commonwealth v. TAP Pharmaceuticals*, 36 A.3d 1197 (Pa. Cmwlth. 2011), a view the majority shares. *See* Majority Opinion at 16. In *TAP*, the Commonwealth Court rejected the argument that a jury's verdict, which found the defendant did not commit fraudulent or negligent misrepresentation, was dispositive of the Section xxi claim. Rather, it held that "[t]he test for deceptive conduct under [Section xxi] is essentially whether the conduct has the tendency or capacity to deceive, which is a lesser, more relaxed standard than that for fraud or negligent misrepresentation." *TAP*, 36 A.3d at 1253. Like the Superior Court below, the majority deems *TAP* to establish that a consumer is not required to prove even negligent conduct by a vendor that has the tendency or capacity to deceive; rather, the vendor is strictly liable for such conduct. *See* Majority Opinion at 16 ("This test is, as the Commonwealth Court has recognized, a lesser, more relaxed standard than that for fraudulent or negligent misrepresentation. As the Commonwealth Court concluded, all that the statute requires the plaintiff to prove is that "the acts or practices are capable of

being interpreted in a misleading way." (citation omitted)). In my view, this reasoning is misguided.

The Commonwealth Court in *TAP*, in arriving at the holding relied on by the majority, recognized that the 1996 amendment to Section xxi nullified its previous interpretation of that section as requiring a consumer to demonstrate that the vendor committed the common law tort of fraud. *See TAP*, 36 A.3d at 1253-1254 (discussing, *inter alia*, *Commonwealth v. Percudani*, 825 A.2d 743 (Pa. Cmwlth. 2003) (rejecting Superior Court's continuing requirement of proof of common law fraud under Section xxi, given that it would render the addition of the phrase "deceptive conduct" superfluous and contrary to our Court's view that Section xxi should be liberally construed)). In developing its "lesser, more relaxed standard," the Commonwealth Court specifically characterized its post-amendment interpretation as "hav[ing] the effect of eliminating the *common law* state of mind element (either negligence or intent to deceive), and of softening or eliminating the common law reliance and causation elements implicated in actual deception." *Id.* at 1254 (emphasis added). However, the court did not define the state of mind required under its "lesser" standard.

As discussed above, the common law tort of fraudulent – *i.e.*, intentional – misrepresentation requires a material representation which is made falsely, with knowledge by the maker of its falsity or recklessness as to its truth, and with the intent of misleading another into relying on it. *Gibbs*, 647 A.2d at 889. The tort of negligent misrepresentation requires proof of: (1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in

justifiable reliance on the misrepresentation. *Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999). In both cases, the focus is on the actor's knowledge of the truth or falsity *of the statement* (or expressive act) conveyed to its recipient.

Thus, *TAP* recognized that, for a plaintiff to establish that a vendor engaged in "deceptive conduct" in violation of Section xxi, the plaintiff need not prove that the vendor knew, or should have known, of the falsity of his or her *statement*. *See Bortz*, 729 A.2d at 561 (in order for a plaintiff to succeed on that claim, he must establish that an individual made a statement misrepresenting a material fact). However, rather than eliminating any state of mind requirement for liability to attach, in my view, *TAP* recognized that the addition of "or deceptive" conduct merely broadens the focus of Section xxi's state of mind requirements.

Specifically, by its plain terms, Section xxi no longer requires a plaintiff to establish the tort of fraudulent misrepresentation to recover thereunder. Rather, as I read it, with the 1996 addition of "or deceptive" conduct, Section xxi now broadly prohibits all "deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201-2(4)(xxi). The use of this language reveals that it is not the state of mind of the vendor regarding the truth or falsity of a particular statement that is determinative; rather, the focus has been expanded to include the vendor's state of mind with respect to the misleading or confusing *effect* his statements or actions are likely to have on a consumer. *See* Webster's Unabridged Dictionary 516 (2d ed. 1998) (defining deceptive as "apt or tending to deceive"); American Heritage Dictionary 371 (2d ed. 1982) (defining deceptive as "tending to deceive, misleading"). In my view, then, a violation of Section xxi may be established merely by showing that the vendor is aware, or should be aware,

that his statements are "*capable* of being interpreted in a misleading way" by a consumer, regardless of the vendor's belief regarding the truth or falsity of the statements. *See Golden Gate*, 194 A.3d at 1023 (emphasis added). This is, in essence, a negligence standard. *See generally* Restatement (Second) of Torts § 303 (1965) ("An act is negligent if the actor intends it to affect, or realizes or should realize that it is likely to affect, the conduct of another . . . in such a manner as to create an unreasonable risk of harm to the other."). Under my construction, for example, a vendor could be liable under Section xxi even if his statements are technically true, if he knows or should know that those statements will create a likelihood of confusion or of misunderstanding on the part of a consumer.

Critically, unlike the majority's construction, my interpretation gives meaning to *all* of the words in Section xxi and allows a plaintiff to prevail whenever the vendor either intentionally engages in fraud with respect to a consumer transaction, or whenever the vendor negligently engages in conduct that creates a likelihood of the type of harm that the CPL was intended to prevent – that is, confusion or misunderstanding on the part of a consumer. Stated another way, in my view, a vendor may be liable under Section xxi for deceptive conduct only when he knows, or reasonably should know, that his conduct, be it his actions or statements, is likely to cause misunderstanding or confusion in a consumer regarding the goods or services the vendor is selling. This standard, in my view, effectuates the paramount goal of the CPL — to eliminate unfairness and deception in consumer transactions — by proscribing, in addition to the intentional deception of consumers, conduct which vendors should recognize is likely to deceive reasonable consumers. However, in contrast to the strict liability standard embraced by the majority,

this negligence standard also protects honest businesspeople from incurring unforeseen penalties for statements or acts that no consumer would have been confused or misled by.[4]

For all these reasons, I disagree that Section xxi imposes strict liability, and thus I respectfully dissent.

Chief Justice Saylor and Justice Baer join this dissenting opinion.

---

[4] The majority cites decisions from other jurisdictions construing similar consumer protection statutes prohibiting "deceptive conduct" which have held that these statutes do *not* require proof of intent to establish deceptive conduct. Majority Opinion at 16. However, those decisions do not address whether the implicated statutes require proof of the lesser *mens rea* of negligence. Indeed, other state courts interpreting their own consumer protection laws which, like Section xxi, proscribe deceptive conduct, have found that their statute's prohibitions against deceptive conduct are violated whenever a party to a consumer transaction negligently engages in conduct or actions which deceive reasonable consumers. *See, e.g., Drakopoulos v. U.S. Bank*, 991 N.E.2d 1086, 1094 n.15 (Mass. 2013) ("negligence, where it results in an unfair or deceptive act, may give rise to [Massachusetts Consumer Protection Act] liability"); *Grove v. Huffman*, 634 N.E.2d 1184 (Ill. Ct. App. 1994) (negligent misrepresentation by seller of property as to its condition established violation of Illinois Consumer Protection Act); *Poole v. Union Planters Bank*, 337 S.W.3d 771 (Tenn. Ct. App. 2010) (Tennessee Consumer Protection Act extends to negligent conduct).